PRN Associates LLC and PGN Associates LLC, Plaintiffs-Appellants-Petitioners,

v.

State of Wisconsin Department of Administration, Defendant-Respondent.

PRN Associates LLC and PGN Associates LLC, Plaintiffs-Appellants-Petitioners,

v.

State of Wisconsin Department of Administration, Defendant-Respondent.

Supreme Court

*Nos. 2007AP476, 2007AP751. Oral argument March 5, 2009. —Decided June 17, 2009.*

2009 WI 53

(Also reported in 766 N.W.2d 559.)

659

For the plaintiffs-appellants-petitioners there were briefs by *Joseph R. Cincotta* and the *Law Offices of Joseph R. Cincotta,* Milwaukee, and oral argument by *Joseph R. Cincotta.*

For the defendant-respondent the cause was argued by *Richard E. Braun,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Prism,[1] seeks review of two decisions of the court of appeals: (1) affirming the dismissal of Prism's petition for judicial review of an agency decision; and (2) affirming the dismissal of Prism's amended complaint for

---

[1] Plaintiffs PRN Associates LLC and PGN Associates LLC are collectively referred to as "Prism" throughout this opinion.

declaratory judgment.[2] These consolidated cases arise out of a dispute over a state procurement. Prism submitted a bid, but the contract was ultimately awarded to another developer. The Wisconsin Department of Administration ("DOA") denied Prism's protest, concluding that Prism was not entitled to the contract.

¶ 2. Prism asserts that its petition for judicial review of the DOA's determination was erroneously dismissed as moot. Specifically, Prism contends that it is entitled to relief—either money damages or the award of a state contract. It argues that the circuit court erroneously determined that Prism was required to enjoin the DOA from awarding the contract to another bidder in order to preserve its remedies.

¶ 3. Prism also contends that its amended complaint for a declaratory judgment was erroneously dismissed because sovereign immunity is not a bar to the action. In addition, it argues that the type of relief it seeks can be maintained as a declaratory action and that the legislature has consented to suit under Wis. Stat. § 775.01 (2007–08).[3]

¶ 4. We conclude Prism's petition for judicial review of the DOA's decision was properly dismissed. Even assuming that all of Prism's allegations are true, there is no relief that Prism can receive at this point. Although Prism could have sought an injunction to protect its interest, it failed to do so. Therefore, we

[2] See PRN Associates v. Wis. Dep't Admin., 2008 WI App 103, 313 Wis. 2d 263, 756 N.W.2d 580, affirming orders of the circuit court for Ozaukee County, Paul V. Malloy, Judge; PRN Associates v. Wis. Dep't Admin., No. 2007AP751, unpublished slip op. (Ct. App. May 15, 2008), affirming a judgment of the circuit court for Dane County, Maryann Sumi, Judge.

[3] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

determine that resolution of Prism's protest cannot have any practical effect on this existing controversy and it is therefore moot.

¶ 5. We further conclude that Prism's amended complaint for declaratory judgment was properly dismissed. Wis. Stat. § 775.01 does not waive sovereign immunity in this case because Prism has not complied with the statutory conditions precedent for initiating an action. Even if it had, a claim for the damages Prism seeks cannot be maintained in an action under § 775.01. Accordingly, we affirm the decisions of the court of appeals.

I

¶ 6. These consolidated cases originated with a document Prism filed in Ozaukee County entitled "Petition for Review Pursuant to Wis. Stats. § 227.52 and § 227.53 and/or for Declaratory Judgment Pursuant to Wis. Stat. § 806.04." The action was subsequently split into two separate cases, which have been reconsolidated for our review. The facts recounted below are primarily taken from the petition for review of the agency decision filed in Ozaukee County and the amended complaint for declaratory judgment filed in Dane County.

¶ 7. In October 2002, the University of Wisconsin-Milwaukee ("UWM") and the University of Wisconsin System ("the System") sought a developer to completely renovate the Kenilworth Building, located on Milwaukee's east side. They issued a request for proposals ("the first RFP") pursuant to Wis. Admin. Code Adm Ch. 10.[4] In addition and also pursuant to Adm Ch. 10, they established an evaluation committee to review the proposals.

---

[4] Wis. Stat. § 16.705(2) authorizes the DOA to promulgate rules regulating "the procurement of contractual services."

¶ 8. Prism submitted a bid which was selected by the evaluation committee. The Vice Chancellor of UWM sent Prism a letter which stated in part:

> I am pleased to inform you that, after careful review and consideration of the final proposals, the University and the Evaluation Team has selected Prism Development Company as the developer UWM would like to pursue negotiations with regarding the Kenilworth redevelopment project.

On September 5, 2003, a resolution was passed granting the System the authority to negotiate a contract with Prism. Because of a lease-back provision in Prism's proposal, the State Building Commission's approval was also required.

¶ 9. A developer who had submitted a losing bid protested the selection of Prism pursuant to Adm Ch.

These rules are contained in Wis. Admin. Code Adm Ch. 10.

In relevant part, Adm § 10.15 states:

> (1) Right to protest. Any bidder or proposer . . . who is aggrieved in connection with a solicitation or a notice of intent to award a contract may protest to the procuring agency. . . .

> (2) Authority to resolve protests. The head of the procuring agency, or designee, shall have the authority to settle and resolve a protest of an aggrieved bidder or proposer concerning the solicitation or intent to award a contract.

> . . .

> (5) Appeal. The protester may appeal a decision of the procuring agency . . . to the secretary . . . .

> (6) State of procurements during protests. In the event of the filing of a timely notice of intent to protest, protest, or appeal . . . the state shall not proceed further with the solicitation or with the award of the contract until a decision is rendered in response to the protest or appeal, or unless the secretary, after consultation with the head of the contracting agency, makes a written determination that the award of the contract without delay is necessary to protect substantial interests of the state.

666

10. The developer argued that the selection process had been faulty. At the Building Commission's February 18, 2004 meeting, the System withdrew its request for approval. Subsequently, the System sent a letter to Prism explaining that the request had been withdrawn because "it became apparent that there was no support by [the State Building Commission]. That body's approval was essential to moving forward." The letter invited Prism to participate in a second round of bidding.

¶ 10. In March 2004, a second request for proposals ("the second RFP") was issued by the DOA Division of State Facilities at the direction of the State Building Commission. Prism again submitted a bid. At the same time and pursuant to Wis. Admin. Code Adm § 10.15, Prism filed Notices of Intent to protest the decision to withdraw consideration of the first RFP.

¶ 11. Prism's protest was denied and it appealed to DOA Secretary Mark Marotta. He denied the appeal as untimely, stating in part:

> You have also indicated that you believe s. Adm 10.15(1), Code, allows you to both protest and appeal the decision of the University not to proceed further with the procurement. Section Adm 10.15, Code, allows a protest to be filed within 10 days after the issuance of a solicitation or after issuance of the letter of intent to award a contract. The solicitation in this matter was issued in October, 2002. Thus, your opportunity to protest and appeal decisions relating to the issuance of the solicitation are passed. No letter of intent [for the second RFP] has been issued.

Prism did not seek judicial review of this decision.

¶ 12. Prism alleges that it was "lulled into a belief that a Letter of Intent pursuant to Adm § 10.08 would be forthcoming" to alert those who had submitted bids

that a developer had been selected. It believed that this letter was necessary to trigger its right to protest the selection of another developer. As Prism awaited the issuance of a letter of intent, it simultaneously participated in the second RFP.

¶ 13. In response to a January 26, 2005 letter requesting information, the DOA informed Prism that another developer, WEAS, had been selected as the winning bidder. The DOA's letter explained that Adm Ch. 10 did not apply to the second RFP process because the State Building Commission, a legislative body, authorized the RFP. Therefore, it concluded Prism was not entitled to protest the award under Adm Ch. 10.

¶ 14. Prism viewed the DOA's assertion that Adm Ch. 10 did not apply as "incorrect and incredible." In February 2005, Prism filed a Notice of Intent to Protest and a Protest pursuant to Adm § 10.15. The protest made the following claims: (a) Adm Ch. 10 did not permit the initial award to Prism to be rescinded, and by rescinding the award the System acted ultra vires;[5] (b) the System's withdrawal of the award to Prism was arbitrary and therefore void; (c) the issuance of the second RFP was contrary to law, ultra vires, and void; (d) the State should award the contract to Prism because it submitted the best proposal; and (e) the disclosure of Prism's initial bid was a violation of Adm Ch. 10, rendering the selection process for the second RFP void.

¶ 15. The System denied Prism's protest on March 25, 2005. It determined that the protest did not fit within the requirements of Adm Ch. 10 and that

---

[5] "Ultra vires" is defined as: "Unauthorized; beyond the scope of power allowed or granted by a corporate charter or by law." *Black's Law Dictionary* 1525 (7th ed. 1999).

Adm Ch. 10 does not prohibit a procuring agency from abandoning a RFP prior to the issuance of a contract. It further determined that the second RFP, issued by the Building Commission, was not covered under Adm Ch. 10 and therefore could not be protested.[6] Prism appealed to the Secretary of the DOA pursuant to Adm § 10.15(5).

¶ 16. On June 6, 2005, DOA Secretary Mark Marotta issued a seven-page decision denying Prism's appeal. This decision is the subject of Prism's petition for judicial review, and it was attached to the petition.

¶ 17. Secretary Marotta's decision concluded that the System had the authority to withdraw its letter of intent to award Prism the project during the February Building Commission meeting. It further determined that because Prism did not appeal this decision on time, it had waived its right to object to the first RFP process. Additionally, it concluded that the second RFP was not governed by Adm Ch. 10 because it was issued by the Building Commission, which is a legislative rather than an executive commission.

¶ 18. Meanwhile, on March 15, 2005, the State and WEAS signed the contract. At no point did Prism seek an injunction in circuit court alleging that the

_____

[6] The DOA continued to advance the position that Adm Ch. 10 was inapplicable to the circuit court, the court of appeals, and in its brief to this court. Prism argues that even if Adm Ch. 10 was an inappropriate procedure to use, the State initiated the second RFP under Adm Ch. 10 and was bound to follow the Adm Ch. 10 procedures when Prism filed its protest.

At oral argument, counsel for the DOA acknowledged: "Judge, I couldn't make a cogent argument that [the State did not initiate the second RFP under Adm Ch. 10]. Does it apply in these types of cases? No. I think it applies here [however] because that's the way [the DOA initially] treated it."

DOA was acting beyond its authority. The parties acknowledge that the contract was subsequently executed by WEAS and the redeveloped Kenilworth Building was completed in August 2006.

¶ 19. On July 6, 2005, Prism filed a "Petition for Review Pursuant to Wis. Stats. § 227.52 and § 227.53 and/or for Declaratory Judgment Pursuant to Wis. Stat. § 806.04." Prism asserted that it was entitled to a remedy because the System and the DOA's actions to abandon the first RFP process and then award the contract to WEAS were "ultra vires of their delegated power under Ch. 16 stats. and Adm. 10."[7]

¶ 20. The Ozaukee County circuit court severed Prism's petition into two independent actions—one for judicial review of the DOA's administrative decision under Wis. Stat. Ch. 227, and one for declaratory judgment. The Ozaukee County court retained jurisdic-

---

[7] Prism sought the following relief in paragraph 24 of its petition:

 a. a determination that the State was estopped from arguing that "Prism is precluded, for any reason, from challenging . . . [the actions of UWM and the System] to withdraw and/or rescind the award of the Kenilworth contract to Prism";

 b. a determination that the procedures used in both RFPs were irregular and not in compliance with law;

 c. a determination that the DOA's conclusion that the matter is not governed by Adm Ch. 10 was erroneous;

 d. a determination that it was improper to rescind the initial selection of Prism because Adm § 10.08 provides that the contract shall be awarded to the bidder selected by the evaluation committee;

 e. a determination that the actions of the System and the DOA were ultra vires;

 f. a determination that Prism is entitled to a remedy—either the award of the contract or economic damages.

tion of the Chapter 227 case ("the Ozaukee County case"). The court granted the State's motion for a change in venue in the declaratory judgment action and transferred it to Dane County circuit court ("the Dane County case").

¶ 21. In Ozaukee County, the DOA filed a motion to dismiss for failure to state a claim. It asserted that even if all of the allegations contained in the petition for judicial review of the agency's decision were true, the case was moot because there was no relief that could be granted.

¶ 22. After a hearing on the merits, the circuit court granted the DOA's motion to dismiss.[8] The court stated, "in a Chapter 227 proceeding the question has to

---

[8] The circuit court granted the DOA's motion to dismiss for failure to state a claim upon which relief can be granted. It is unclear whether dismissal for failure to state a claim is an appropriate procedure for dismissing a petition for judicial review of an agency decision.

In *Wisconsin Envtl. Decade Inc. v. Pub. Serv. Comm'n*, we determined that the summary judgment procedure was inapplicable to proceedings for judicial review of an administrative decision. 79 Wis. 2d 161, 170, 255 N.W.2d 917 (1977). We explained that Chapter 227 provides for review of an agency decision rather than a new trial of the merits of a new claim. *Id.* ("[J]udicial review of administrative decisions under ch. 227 envisages a review upon the [agency] record, and there is no trial de novo in the circuit court during such proceedings.") The summary judgment procedure was inapplicable in a Chapter 227 review because there were no new facts to be tested.

Nevertheless, a petition for review of an agency decision can be dismissed if it is moot:

A motion to dismiss for mootness . . . does not request a determination on the merits. When a case is dismissed because the issues therein have become moot, the rights of the parties are not adjudicated, and neither party is entitled to judgment. All that is

become what practical effect would a favorable decision to the plaintiffs have." It concluded that injunctive relief was not available—the contract had already been let to another bidder and performed. It further concluded that a wronged bidder was not entitled to a monetary (damages) remedy from the State under the relevant statutes, administrative code provisions, and the common law. Therefore, even if everything that Prism alleged was correct, the court concluded that there was no relief that could be granted and the claim was moot. Prism's motion to reconsider this decision was denied.[9]

¶ 23. In Dane County, the DOA also filed a motion to dismiss Prism's amended complaint for declaratory judgment for failure to state a claim. Among other arguments, it asserted that Prism's amended complaint should be dismissed for lack of personal jurisdiction

involved . . . is a conclusion by the court that the determination sought cannot have any practical effect upon an existing controversy.

*Id.* at 171.

We proceed to examine the circuit court's determination that Prism's protest is moot because it is the essence of the circuit court's decision.

[9] Under Wis. Stat. § 227.55, the agency under review must transmit the record to the reviewing court. Yet, in this case the agency's record was never transmitted to the circuit court and is therefore not part of the record on appeal. Normally, the absence of the agency's record would foreclose our ability to review the agency's decision. Here, however, the basis for the circuit court's dismissal of the case, mootness, is a legal determination that does not address the merits of the agency's decision. The circuit court commented, "The record should be here. But, legally, the matter would be moot, whether or not the record is filed."

because of sovereign immunity. The DOA argued that Wis. Stat. § 775.01, which permits some claims to be brought against the State, did not constitute consent to this suit. The circuit court concluded, "the state's motion to dismiss for lack of personal jurisdiction based on its immunity from suit must be granted because the state has not consented to this declaratory judgment action."[10]

## II

¶ 24. These consolidated cases require us to address whether Prism's petition for judicial review was properly dismissed as moot. We are also required to address whether Prism's amended complaint for declaratory judgment was properly dismissed for failure to state a claim upon which relief can be granted.

¶ 25. An issue is moot when its resolution will have no practical effect on the underlying controversy. *State ex rel. Riesch v. Schwartz,* 2005 WI 11, ¶ 11, 278 Wis. 2d 24, 692 N.W.2d 219. Mootness is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals. *Cornucopia Inst. v. U.S. Dep't Agriculture,* 560 F.3d 673, 675 (7th Cir. 2009).

---

[10] After oral argument in this court, Prism filed a motion to supplement the record with the Department of Justice's investigation into Secretary Marotta and the Kenilworth Building Project. We granted Prism's motion over the objection of the DOA. The investigation concluded that "[t]here is no evidence, either from the investigation and interviews or from the case documents, to substantiate Prism's allegations against Marotta." We do not further discuss the facts contained in the investigation because they do not illuminate our task of determining whether Prism's petition for judicial review and amended complaint were properly dismissed.

■■

¶ 26. Whether a complaint states a claim upon which relief can be granted is also a question of law. *Meyers v. Bayer AG,* 2007 WI 99, ¶ 21, 303 Wis. 2d 295, 735 N.W.2d 448. A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *Id.*

■

¶ 27. We accept as true both the facts in the complaint and the reasonable inferences that may be drawn from such facts. *Id.* "A complaint should not be dismissed for failure to state a claim unless it appears certain that no relief can be granted under any set of facts that a plaintiff can prove in support of [the] allegations." *Watts v. Watts,* 137 Wis. 2d 506, 512, 405 N.W.2d 303 (1987). We review a grant or denial of a motion to dismiss for failure to state a claim independently of the determinations rendered by the circuit court and the court of appeals, but benefiting from their analyses. *Shannon E.T. v. Alicia M. V.M.,* 2007 WI 29, ¶ 31, 299 Wis. 2d 601, 728 N.W.2d 636.

III

Ozaukee County Review of an Agency Decision

■

¶ 28. We turn now to the question of whether the circuit court properly dismissed as moot Prism's petition for judicial review. "The general rule is that the court will not determine abstract principles of law." *City of Racine v. J-T Enters. of Am.,* 64 Wis. 2d 691, 700, 221 N.W.2d 869 (1974).

■

¶ 29. An issue is moot when the court concludes that its resolution cannot have any practical effect on the existing controversy. *Riesch,* 278 Wis. 2d 24, ¶ 11.

The court of appeals has explained that "a moot question is one which circumstances have rendered purely academic." *State ex rel. Olson v. Litscher,* 2000 WI App 61, ¶ 3, 233 Wis. 2d 685, 608 N.W.2d 425. Appellate courts generally decline to reach the merits of an issue that has become moot.[11] *Riesch,* 278 Wis. 2d 24, ¶ 12.

¶ 30. The State argues that even if Prism is correct on the merits of its protest, a court resolution would have no effect on the existing controversy because there is no remedy that can be granted to Prism at this point. It contends that the petition for judicial review is therefore rendered moot. Thus, the question we must answer is: even if Prism's protest was improperly denied, is there any relief that it can receive now, almost three years after the project has been completed?

¶ 31. To determine whether the resolution sought can have any practical effect on the existing controversy, we do not address the factual and legal issues implicated in Prism's petition for judicial review. For purposes of this review, we assume that Prism would be able to prove every fact and support every legal allegation in its protest and petition for judicial review. Rather, we examine Prism's requested relief. In its petition for judicial review, Prism requested two distinct remedies: money damages for "the value of its

---

[11] A court will make an exception and consider a moot issue under certain circumstances. For instance, a court may decide a moot issue if it is of great public importance or arises frequently enough to warrant a definitive decision to guide the circuit courts. *State ex rel. Riesch v. Schwartz,* 2005 WI 11, ¶ 12, 278 Wis. 2d 24, 692 N.W.2d 219. Prism does not contend that this case falls under one of these exceptions. Rather, Prism argues that the issue is not moot.

winning proposal" in the first RFP or award of the contract. We address each potential remedy in turn.

## A

¶ 32. Prism asserts that it is entitled to money damages because it should have been awarded the contract under Adm Ch. 10, and the agency acted improperly when it instead let the contract to WEAS. Prism asserts that Adm § 10.15(2), which gives the DOA the authority to "settle and resolve" a protest, envisions a damages remedy for wronged bidders.[12] Yet, a money damages remedy would be contrary to the explicit purposes of Adm Ch. 10.

¶ 33. Adm Ch. 10 provides rules governing the State's procurement of contractual services. The purposes of the rules are, in part, "[t]o ensure that contracts for contractual services are entered into only in the best interests of the state," and "[t]o ensure that the state will procure at the lowest possible price, without sacrifice in quality, the contractual services required[.]" Adm § 10.02. Further, Wis. Stat. § 16.75 provides that with certain limited exceptions, contracts should be awarded to the "lowest responsible bidder."

¶ 34. It is an established proposition that procuring statutes and regulations such as Adm Ch. 10 "are designed to prevent fraud, collusion, favoritism and improvidence in the administration of public business, as well as to ensure that the public receives the best

---

[12] Adm § 10.15(2) provides: "The head of the procuring agency, or designee, shall have the authority to settle and resolve a protest of an aggrieved bidder or proposer concerning the solicitation or intent to award a contract."

work ... at the most reasonable price practicable."
*Aqua-Tech, Inc. v. Como Lake Prot. & Rehab. Dist.*, 71
Wis. 2d 541, 550, 239 N.W.2d 25 (1976). As such, these
regulations "are intended for the benefit and protection
of the public and not of the individual bidder." *Id.*

¶ 35. Even though protection for an aggrieved
bidder is not within the purposes of a procurement
regulation, a bidder has standing to contest an agency's
decision to award the contract to another developer.
This is because a bidder "is in a particularly good
position to challenge the bidding authority's action and
thereby protect the rights of the public." *Id.* at 553. The
bidder has a valuable business interest at stake and it is
expected that the bidder will "zealously protect" the
public interest as well as its own. *Id.*

¶ 36. A damages remedy, however, thwarts the
purpose underlying the procurement statutes because
it would require the taxpayers to pay twice for just one
completed project. The court of appeals addressed a
similar situation in *D.M.K., Inc. v. Town of Pittsfield,*
2006 WI App 40, 290 Wis. 2d 474, 711 N.W.2d 672. In
that case, D.M.K. was the lowest bidder on four munici-
pal projects. *Id.*, ¶ 3. The town, however, concluded
that D.M.K. was not a responsible bidder, and it offered
only two of the projects to D.M.K. *Id.*, ¶ 7.

¶ 37. D.M.K. sued the town for lost profits. *Id.*,
¶ 9. The circuit court granted summary judgment in
favor of the town, and the court of appeals affirmed.
After recognizing that the regulations were intended to
protect the public, not the individual bidder, the court of
appeals concluded that requiring the town to pay twice
for the same project is contrary to the public interest:

677

> If D.M.K. were successful in [recovering its purported damages], the Town and its taxpayers would pay D.M.K.'s $216,000 in lost profits *in addition* to the contract price paid to the contractor who performed the work. On its face, this result fails to benefit or protect the public.

*Id.*, ¶ 26.

¶ 38. Prism argues that because *Aqua-Tech* and *D.M.K.* both involved lawsuits against municipalities, they have no application to lawsuits against the State. This argument is unavailing. Like the statutes discussed in *Aqua-Tech* and *D.M.K.*, the stated purpose of Adm Ch. 10 is to protect the taxpayer from unnecessary expenditures. Taxpayers are not protected when any governmental body pays twice for the performance of one contract—regardless of whether that governmental body is a municipality or the State. We conclude that the reasoning in *Aqua-Tech* and *D.M.K.* applies to this case and that Prism is not entitled to a damages remedy.

### B

■■■

¶ 39. Prism also seeks as a remedy the award of the contract. It contends that as the winning bidder of the first RFP process, it is entitled to the contract.[13] By the time Prism filed its petition for judicial review of the agency decision, however, the contract had already been signed.[14] In *State ex rel. Hron Bros. Co. v. City of*

---

[13] As authority for this proposition, Prism cites Adm § 10.08(7), which states: "Award shall be based on the evaluation committee recommendation . . . ."

[14] The contract was signed on March 15, 2005, and Prism filed its petition for review with the circuit court in Ozaukee County on July 6, 2005.

*Port Washington,* 265 Wis. 507, 509, 62 N.W.2d 1 (1953), we stated, "[T]he fact that the contract has actually been awarded to another is sufficient to induce the courts to decline to interfere to further complicate the matter, even though they might otherwise have done so." (quoting *State ex rel. Phelan v. Bd. of Educ.,* 24 Wis. 2d 683, 684 (1869)).

¶ 40.　Moreover, as the parties acknowledge, the Kenilworth redevelopment project is finished and the Kenilworth Building has been fully in use for nearly three years. We cannot unravel a contract when it has already been fully performed. As a practical matter, Prism cannot perform this contract. It makes no sense to award a contract for building a project which has already been completed.

¶ 41.　Because Prism cannot receive either money damages or an award of the contract at this point, there is no remedy that Prism can receive even if all of its factual and legal allegations are true. This does not mean, however, that Prism was always without a remedy.

¶ 42.　It is undisputed that the DOA informed Prism that it was going ahead with contract negotiations with WEAS and that it did not intend to stay the negotiations to permit for resolution of Prism's protest.[15] Nearly six weeks elapsed between the date Prism

---

[15] Adm § 10.15(6) provides that the DOA will impose a stay in a procurement proceeding while a protest is pending:

> In the event of the filing of a timely notice of intent to protest, protest or appeal . . . , the state shall not proceed further with the solicitation or with the award of the contract until a decision is rendered in response to the protest or appeal, or unless the secretary . . . makes a written determination that the award of the contract without delay is necessary to protect substantial interests of the state.

was put on notice that there would be no automatic stay and the date that the contract with WEAS was signed. Yet Prism did not seek an injunction to prevent the contract from being awarded to WEAS.[16]

■ ■

¶ 43. It is expected that an aggrieved bidder will "zealously protect" the public interest and the public purse by taking legal action to ensure that a contract is not awarded to the wrong bidder. *See Aqua-Tech,* 71 Wis. 2d at 553. If Prism believed that it was entitled to the contract, Prism was required to seek a temporary injunction to prevent the award of the contract to WEAS. In so doing, Prism would have preserved any entitlement it had to the contract.

¶ 44. Prism asserts that an injunction would not have been available because sovereign immunity precludes a lawsuit against the State unless the legislature consents to the suit.[17] Here, there is no statute giving legislative consent for a suit to enjoin the State from awarding a contract to another bidder.

---

[16] Prism asserts that under Adm Ch. 10, a stay should have been automatically imposed and that a stay would have relieved it of the necessity of seeking an injunction to prevent the award of the contract. However, Prism acknowledges that it was put on notice that the DOA did not plan to impose a stay. At oral argument, counsel for the DOA explained: "February 3 of 2005, before the contract is signed, the DOA sends a letter to Prism. . . . The DOA's position—right or wrong—was that Adm 10 did not apply and therefore there would be no automatic stay. This was six weeks before the contract was signed. It was four months, five months before Prism ever started an action, and even then it did not seek injunctive relief."

[17] *See* Wisconsin Constitution art. IV ("The legislature shall direct by law in what manner and in what courts suits may be brought against the state.").

¶ 45. However, there is a "general exception to the rule of state immunity" that would have been applicable here. *See City of Kenosha v. State*, 35 Wis. 2d 317, 323, 151 N.W.2d 36 (1967). In *Kenosha*, we explained:

> A general exception to the rule of state immunity for agencies or arms of the state, however, is that courts may entertain suits to enjoin state officers and state agencies from acting beyond their constitutional or jurisdictional authority. These suits are permitted because they are suits against individuals acting in excess of their authority.

*Id.* at 323–24.

¶ 46. In Prism's protest, filed before the contract was signed with WEAS, Prism contended that the System and the DOA were acting "ultra vires" because they did not follow the provisions of Adm Ch. 10 when they: (1) rescinded the initial award of the contract to Prism; (2) issued a second proposal; and (3) disclosed information from Prism's first bid. That is, Prism asserted that the DOA was acting without authority, which would have allowed Prism to seek an injunction against the agency. *See id.* Yet it did not do so.

¶ 47. It appears that Prism was aware of the necessity of seeking an injunction to preserve its interest in the contract. Instead of filing for an injunction, however, Prism sought assurances from attorneys for the DOA that it need not seek an injunction and would be permitted to seek a damages remedy.[18] Based on the correspondence provided by Prism, these assurances were not given. Ultimately, Prism attained neither an

---

[18] This allegation does not appear in either the petition for judicial review or the amended complaint. Prism attempted to submit correspondence in support of this argument in the Ozaukee County case. Although the correspondence between

assurance that a damage remedy was available nor an injunction that could have preserved its interest in the contract.

¶ 48. It should have been apparent to Prism that under Wisconsin law, a damages remedy likely was unavailable and that an injunction was required to protect any interest it had in the Kenilworth contract. In *Aqua-Tech,* the court stated that a temporary injunction might be necessary to "avoid rendering ineffective a possible judgment" in the aggrieved bidder's favor. 71 Wis. 2d at 552. An injunction would prevent the procuring agency from awarding the contract to another bidder pending a decision on the merits of the protest. *Id. Aqua-Tech* stands for the proposition that a disappointed bidder must seek a temporary injunction before the issue becomes moot.[19]

¶ 49. We conclude that the Ozaukee County circuit court properly dismissed as moot Prism's petition for judicial review of the DOA's decision. Even assuming that all of Prism's allegations are true, there is no

___

Prism and the DOA was stricken from the record by the circuit court, both parties relied on this correspondence in their arguments here.

[19] Prism requests that we send the case back to the DOA to ask the Secretary to "settle and resolve" its protest under Adm § 10.15(2). We fail to see how this action would accomplish anything other than to further extend this already protracted dispute. The DOA cannot award the contract to Prism when it has been let to another bidder and fully performed. Further, awarding Prism money damages would be contrary to the purposes of the procurement regulations as discussed above.

Under these circumstances, sending the case back for the DOA to "settle and resolve" a protest that it has already denied would amount to an exercise in futility.

relief that Prism can receive at this point. Prism is not entitled to money damages. Further, the DOA cannot be enjoined to award the contract to Prism because the contract has already been fully performed. Although Prism could have sought an injunction to protect any interest it had in the contract, it did not do so. Therefore, we conclude that resolution of Prism's protest cannot have any practical effect on this existing controversy.

## IV

### Dane County Declaratory Judgment Action

¶ 50. We turn next to the action for declaratory judgment under Wis. Stat. § 804.06, which was dismissed on the grounds of sovereign immunity. Prism filed an amended complaint in Dane County seeking the following relief: (1) a declaration that the DOA should have awarded the contract to Prism and violated Adm Ch. 10 by not doing so; (2) a declaration that the DOA prevented and denied Prism the opportunity to protest under Adm Ch. 10; (3) a declaration that as the winning bidder of the first RFP, Prism had either a contract or an exclusive right to negotiate for a contract; (4) a declaration that the DOA violated Adm Ch. 10 by releasing the contents of Prism's first proposal to the public; and (5) a declaration that the DOA acted ultra vires by authorizing and conducting the second RFP.

[18–20]

¶ 51. As discussed above, the State cannot be sued without its consent, and the legislature directs the manner in which suits may be brought against the State. *See Kenosha,* 35 Wis. 2d at 322; *Lister v. Board of Regents,* 72 Wis. 2d 282, 291, 240 N.W.2d 610 (1976). A suit against a state agency constitutes a suit against the

State for purposes of sovereign immunity. *Lister,* 72 Wis. 2d at 291. If the legislature has not specifically consented to the suit, then sovereign immunity deprives the court of personal jurisdiction over the State, assuming that the defense has been properly raised. *Id.* at 291.

¶ 52. Like other lawsuits, actions for declaratory relief can be dismissed on the grounds of sovereign immunity. Nonetheless, there are occasions when a suit for declaratory judgment against a state agency is permissible. In *Lister,* we explained:

> [T]he court has [] recognized that the declaratory judgment procedure is particularly well-suited (in cases where such relief is otherwise appropriate) for resolving controversies as to the constitutionality or proper construction and application of statutory provisions. As a result, it has been necessary to engage in a fiction that allows such actions to be brought against the officer or agency charged with administering the statute[.]

*Id.* at 303.

¶ 53. Declaratory judgment provides prospective rather than remedial relief. The purpose of declaratory relief and Wis. Stat. § 806.04, the Uniform Declaratory Judgments Act, is:

> to enable controversies of a justiciable nature to be brought before the courts for settlement and determination *prior to the time that a wrong has been threatened or committed.* The purpose is facilitated by authorizing a court to take jurisdiction *at a point earlier in time than it would do under ordinary remedial rules and procedures.*

*Id.* at 307 (emphasis added). Declaratory judgment "provides a remedy which is primarily anticipatory or preventative in nature." *Id.*

¶ 54. In *Lister*, a group of students brought suit against the University of Wisconsin Board of Regents. The students argued that they had been classified as non-residents contrary to the Wisconsin Statutes and therefore had to pay tuition at a higher rate. Among other remedies, they sought a declaratory judgment of their right to have been classified as residents. *Id.* at 305.

¶ 55. This court concluded that the action for a declaratory judgment could not be maintained. We said:

> *A court cannot close its eyes to the purpose which a declaration of rights will serve in the particular case.* It is not a sufficient ground for declaratory relief that the parties have a difference of opinion as to the proper construction and application of a particular statute. *No anticipatory or preventative relief is sought in this action.* To the extent that the complaint attempts to state a claim to relief under state law, the only consequence which the desired declaration of rights could have would be to settle the plaintiffs' rights to recover the amounts paid in nonresident tuition. *The action is, in effect, one for damages.*

*Id.* at 308 (emphasis added); *see also Brown v. State,* 230 Wis. 2d 355, 382, 602 N.W.2d 79 (Ct. App. 1999) ("We acknowledge that sovereign immunity does not bar a suit for a declaratory ruling that an individual state official or agency has violated a statute *when there is an anticipatory or preventative purpose for the ruling . . . .* It is therefore not apparent from the complaint . . . that there is any purpose for the declaratory judgment other than to establish the State's liability for damages on a claim barred by sovereign immunity." (emphasis added)).

¶ 56. The situation here is analogous to the situation in *Lister.* The declarations Prism seeks all relate to the DOA's past actions, such as failing to award the contract to Prism, rescinding the first RFP, and issuing

685

a second RFP. None relates to the State's future conduct. In effect, Prism seeks a declaration that its rights were violated during the procurement procedure so it can pursue a damage remedy against the State.[20]

¶ 57. "A declaration which seeks to fix the state's responsibility to respond to a monetary claim is not authorized by Wisconsin's Declaratory Judgments Act." *Lister* at 308. We conclude that a declaratory action cannot be maintained because Prism is seeking money damages rather than anticipatory or preventative relief.

¶ 58. Nonetheless, Prism argues that its amended complaint is justiciable because Wis. Stat. § 775.01 waives sovereign immunity and authorizes suit against the State for contract actions that would render the state a debtor. Wis. Stat. § 775.01 provides:

> Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service . . . , and by filing with the clerk of court a bond . . . to the effect that the claimant will indemnify the state against all costs that may

[20] In its brief, Prism stated: "The ultimate objective is a money judgment against the State," and that "The declaratory judgment is prefatory to further action for actual relief."

At oral argument, Prism's attorney clarified that it sought a declaratory judgment so it could ultimately receive money damages: "[Damages] are contemplated strongly in [Adm Ch. 10]. There is really no other meaningful relief that can be granted. . . . What I would cite to is 775 certainly contemplates money being paid to contracting parties who lose out and their contract is breached." Counsel later continued: "What I need the court to say is Adm 10 applies; Adm 10.08 says the contract shall be awarded to the winner[.] . . . and [the court] should I think—I hope it does—address the issue of the type of relief available in the Adm 10.15 protest and appeal proceedings."

accrue in such action . . . in case the claimant fails to obtain judgment against the state.

Chapter 775 is limited to claims which, "if valid, would render the State a debtor to the claimant." *Brown,* 230 Wis. 2d at 364 (citing *Cords v. State,* 62 Wis. 2d 42, 50, 214 N.W.2d 405 (1974). The chapter does not authorize tort claims against the State. *See id.; Houston v. State,* 98 Wis. 481, 487, 74 N.W. 111 (1898).

¶ 59. Prism's argument that Section 775.01 authorizes this lawsuit is unpersuasive for two reasons. First, Prism is procedurally barred from relying on Wis. Stat. Ch. 775 because it has not met the conditions precedent for filing such a claim. Before a Chapter 775 claim can be filed, the following conditions must be met: (1) the claim must be submitted to the legislature; (2) the claim must be denied; and (3) the claimant must file a bond with the clerk of courts. Wis. Stat. § 775.01.

¶ 60. Prism acknowledges that it has not satisfied these statutory requirements. Rather, it contends that the Claims Board declined to take any action on the claim until the court case was completed because the Claims Board is a forum of last resort. Prism argues that it was placed in a Catch-22 situation because it could not file a claim until this court case was complete, but it could not be granted relief in court unless it could demonstrate that the legislature authorized suit.

¶ 61. This argument is not persuasive. Here, Prism filed an action in court seeking a declaration of rights, presumably so that it could later file a claim for money damages with the legislature. In order to have personal jurisdiction over the DOA, however, we must first conclude that the legislature authorized this suit. The legislature has not authorized this suit against the State unless Prism has followed the conditions precedent for bringing suit. It has not done so here.

¶ 62. Second, the damages Prism seeks are not the type that are authorized under Section 775.01 as that statute has been interpreted by the courts. In *Koshick v. State*, 2005 WI App 232, 287 Wis. 2d 608, 706 N.W.2d 174, the plaintiff brought a breach of contract action against the State. He asserted that he entered into a contract with the State permitting him to lease the Wisconsin State Fair Park for an event. *Id.*, ¶ 2. The State reneged on its promise. *Id.* Koshick followed the statutory procedures necessary to bring a claim against the State. *Id.*, ¶ 4 n.3. When the legislature rejected his claim, he then filed a civil suit in circuit court seeking damages for lost profits and expenses incurred. *Id.*, ¶ 1.

¶ 63. The court of appeals interpreted a long line of cases to determine whether Koshick could maintain a breach of contract claim under § 775.01 for lost profits and expenses incurred. Relying on a 1952 case, *Trempealeau County v. State*, 260 Wis. 602, 51 N.W.2d 499 (1952), the court concluded that § 775.01 authorizes suits to recover "a specific sum of money which is due or owing from [the State] to another." *Koshick*, 287 Wis. 2d 608, ¶ 11. The court concluded that Koshick could not maintain an action under § 775.01 because he was not seeking "an amount due for goods or services that he has sold or delivered to the State" or "money that the State has received that he asserts he is entitled to."[21] *Id.*, ¶ 12.

¶ 64. The facts in this case are similar to the facts in *Koshick*. As in *Koshick*, Prism claims that it had a contract with the State and it seeks damages for the

---

[21] *See Trempealeau County v. State*, 260 Wis. 602, 51 N.W.2d 499 (1952) (permitting the county to bring an action under the predecessor to the current § 775.01 to recover money mistakenly paid to the State for hunting and fishing licenses issued by the county); *Boldt v. State*, 101 Wis. 2d 566, 568, 305 N.W.2d 133 (1981) (permitting a claim for recovery of certain Social Security payments the State had received on the plaintiff's behalf).

cost of preparing its winning bid and for "the value of the contract."[22]

¶ 65. Prism does not assert that its ch. 775 action can be maintained under the holding of *Koshick*. Instead, it contends that *Koshick* was wrongly decided. In essence, Prism concedes that we must overrule *Koshick* to permit Prism's claim under Section 775.01 to go forward.

¶ 66. We decline to do so here. It is the role of the legislature, rather than that of the court, to consent to suit against the State. The *Koshick* court relied on the text of the statute and existing case law when it concluded that a breach of contract action for lost profits and expenses incurred could not be maintained under § 775.01.[23]

¶ 67. We conclude that Prism cannot maintain a declaratory action against the DOA because Prism is

---

[22] At oral argument, one of the justices commented, "What you're asking for here as I understand it is the money damages for the cost of putting together a proposal." Prism's counsel responded, "We want at least that. We also want the value of that proposal. Which is—I mean, don't say lost profits, but I think there is some value to that proposal that is substantial."

[23] Prism also argues that the takings clause of the Wisconsin Constitution is an exception to sovereign immunity that applies in this case. *See* Wis. Const. art. I, § 13. Its brief spends less than one page discussing the takings exception before moving on to other issues. It cites just one case relating to the law of eminent domain and real estate law. *See Zinn v. State,* 112 Wis. 2d 417, 324 N.W.2d 67 (1983). More importantly, Prism's amended complaint did not even assert a takings claim. Under these circumstances, we decline to address the argument. *See State v. Franklin,* 2004 WI 38, n.5, 270 Wis. 2d 271, 677 N.W.2d 276 (noting that we generally decline to address issues that are not fully presented by the parties).

seeking money damages rather than anticipatory or preventative relief. We further determine that Wis. Stat. § 775.01 does not waive sovereign immunity in this case because Prism has not complied with the statutory conditions precedent of that section and because even if it had, the damages Prism seeks cannot be maintained in an action under § 775.01.

## V

¶ 68. In sum, we conclude Prism's petition for judicial review of the DOA's decision was properly dismissed. Even assuming that all of Prism's allegations are true, there is no relief that Prism can receive at this point. Although Prism could have sought an injunction to protect its interest, it failed to do so. Therefore, we determine that resolution of Prism's protest cannot have any practical effect on this existing controversy and is therefore moot.

¶ 69. We further conclude that Prism's amended complaint for declaratory judgment was properly dismissed. Wis. Stat. § 775.01 does not waive sovereign immunity in this case because Prism has not complied with the statutory conditions precedent for initiating an action. Even if it had, a claim for the damages Prism seeks cannot be maintained in an action under § 775.01. Accordingly, we affirm the decisions of the court of appeals.

*By the Court.*—The decisions of the court of appeals are affirmed.