COURT OF APPEALS
DECISION
DATED AND FILED

September 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP69**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018ME21**

**IN COURT OF APPEALS
DISTRICT IV**

IN THE MATTER OF THE MENTAL COMMITMENT OF C. A. D.:

JACKSON COUNTY,

PETITIONER-RESPONDENT,

V.

C. A. D.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Jackson County: ANNA L. BECKER, Judge. *Dismissed*.

¶1        NASHOLD, J.[1]  C.A.D. appeals a February 1, 2019 order of the circuit court extending his involuntary commitment for a 12-month period. The

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

extension, also referred to in this opinion as a recommitment, expired on or about February 1, 2020. For the reasons set forth below, I conclude that C.A.D.'s challenge to the recommitment order is moot and that C.A.D. has not shown that an exception to the mootness doctrine applies. Accordingly, C.A.D.'s appeal is dismissed.

## BACKGROUND

¶2    C.A.D. has been diagnosed with Substance Use Disorder, Severe, and Schizoaffective Disorder, Bipolar Type, Severe. Pursuant to WIS. STAT. ch. 51, C.A.D. was involuntarily committed to mental health treatment by a circuit court order entered on July 11, 2018. An order for involuntary medication and treatment was entered on the same date.

¶3    Jackson County petitioned for an extension of C.A.D.'s commitment on December 21, 2018. A jury trial was held on the petition on February 1, 2019. The jury found that C.A.D. was mentally ill, was dangerous to himself or others, and was a proper subject for treatment. In an order entered on February 1, 2019, the court extended C.A.D.'s involuntary commitment for a period of 12 months. It is from this order that C.A.D. filed a notice of appeal on January 9, 2020.[2]

---

[2] On December 12, 2019, prior to C.A.D. filing his notice of appeal in the instant case, the County again petitioned to extend C.A.D.'s commitment for an additional 12 months. C.A.D. filed a request for a jury trial, and on January 15, 2020, the circuit court issued an order extending C.A.D.'s commitment for 64 days, until March 19, 2020, "at which time a jury trial will be held to determine if further extension of [C.A.D.'s] commitment is warranted." The record does not reveal any further proceedings, and, although the final brief in this case was filed on July 28, 2020, the parties do not address the second extension. Thus, this opinion does not discuss the second extension further.

**DISCUSSION**

¶4      C.A.D. makes two arguments on appeal.  First, C.A.D. argues that Wisconsin's recommitment statute, WIS. STAT. § 51.20(1)(am), is unconstitutional as applied to him, and second, C.A.D. contends that the County failed to prove by clear and convincing evidence that he is dangerous, a prerequisite to a commitment extension under § 51.20(1)(a)2. and (1)(am).  Because I agree with the County that C.A.D.'s appeal is moot, I do not reach the merits of C.A.D.'s challenges to his recommitment.

¶5      Mootness is an issue that this court reviews de novo.  *Waukesha Cty. v. S.L.L.*, 2019 WI 66, ¶10, 387 Wis. 2d 333, 929 N.W.2d 140.  "'An issue is moot when its resolution will have no practical effect on the underlying controversy.'"  *Portage Cty. v. J.W.K.*, 2019 WI 54, ¶11, 386 Wis. 2d 672, 927 N.W.2d 509 (quoting *PRN Assocs. LLC v. DOA*, 2009 WI 53, ¶25, 317 Wis. 2d 656, 766 N.W.2d 559).  This court generally declines to reach moot issues but may choose to do so in "exceptional or compelling circumstances."  *See id.*, ¶12 (quoted source and internal quotation marks omitted).  Courts may overlook mootness if an issue falls within one of five exceptions:  (1) the issue is of great public importance; (2) the issue involves the constitutionality of a statute; (3) the issue arises often and a decision from this court is essential; (4) the issue is likely to recur and must be resolved to avoid uncertainty; or (5) the issue is likely to repeat and yet evades review.  *See id.*

¶6      In arguing that C.A.D.'s recommitment is a moot issue, the County relies on *J.W.K.* and on *Winnebago County v. Christopher S.*, 2016 WI 1, 366 Wis. 2d 1, 878 N.W.2d 109.  In *Christopher S.*, our supreme court concluded that Christopher S.'s challenge to an expired initial commitment order was moot.

*See Christopher S.*, 366 Wis. 2d 1, ¶¶30-31. However, the court nevertheless addressed the issues raised in that case, concluding that they were of great public importance and were likely to evade review. *Id.*, ¶¶30, 32. *J.W.K.* also addressed mootness but, like this case, *J.W.K.* involved a recommitment order rather than an initial commitment order. The *J.W.K.* court considered whether J.W.K.'s challenge to a 2016 recommitment order was rendered moot because the 2016 order expired after the court again extended J.W.K.'s commitment in 2017 under a separate order. *J.W.K.*, 386 Wis. 2d 672, ¶1.

¶7 In concluding that J.W.K.'s challenge was moot, the court stated: "Reversing the expired 2016 order for insufficient evidence would have no effect on subsequent recommitment orders because later orders stand on their own under the language of the statute." *Id.* The court further stated that "[a]n appeal of an expired commitment order is moot," and that reversing the expired order "'will have no practical effect on the underlying controversy'" because J.W.K. "is no longer subject to the 2016 order." *Id.*, ¶14 (quoting *PRN Assocs.*, 317 Wis. 2d 656, ¶25).[3]

¶8 C.A.D. argues that his case is distinguishable from *Christopher S.* and *J.W.K.* because, unlike C.A.D., the appellants in those cases did not assert that collateral consequences resulted from the expired commitment orders. C.A.D.

---

[3] On August 20, 2020, our supreme court accepted review in *Portage County v. E.R.R.*, No. 2019AP2033, unpublished slip op. (WI App May 21, 2020). As was also true in *Portage County v. J.W.K.*, 2019 WI 54, 386 Wis. 2d 672, 927 N.W.2d 509, the *E.R.R.* court determined that E.R.R.'s challenge to his recommitment order was moot because a new order extending his commitment had been entered and E.R.R. was therefore no longer subject to the recommitment order at issue on appeal. *E.R.R.*, No. 2019AP2033, ¶10. In the instant case, both the challenged 12-month recommitment order and the subsequent 64-day recommitment order have expired, and the record does not reveal any further proceedings or indicate whether C.A.D. is currently committed.

observes that, in *J.W.K.*, the court specifically stated that its mootness holding was "limited to situations where, as here, no collateral implications of the commitment order are raised." *See J.W.K.*, 386 Wis. 2d 672, ¶28 n.11. C.A.D. contends that, although he is no longer subject to the recommitment order, his challenge to the order is not moot because he is subject to three collateral consequences: (1) a firearms ban; (2) the stigma associated with being subject to an involuntary commitment order; and (3) possible liability for costs of his care.

¶9      According to C.A.D., his case is instead governed by *Marathon County v. D.K.*, 2020 WI 8, 390 Wis. 2d 50, 937 N.W.2d 901. In that case, D.K. was civilly committed, and he appealed the commitment order. *Id.*, ¶¶11-13. Five days after his notice of appeal was filed, D.K.'s commitment order expired, and the County did not seek an extension. *See id.*, ¶13. The County argued that D.K.'s challenge to his commitment was moot because his commitment had expired and the issue did not fall within any of the exceptions to the mootness doctrine. *Id.*, ¶20. Like C.A.D., D.K. argued that his appeal was not moot because, even though his commitment had expired, three collateral consequences of his commitment remained: liability for costs of his care; a firearms prohibition; and the negative stigma attached to a mental commitment. *Id.* The court agreed with D.K. that his appeal was not moot, concluding: "On appeal, a decision in D.K.'s favor would void the firearms ban and therefore have a 'practical effect.' Thus, we conclude that D.K.'s commitment is not a moot issue because it still subjects him to the collateral consequence of a firearms ban." *Id.*, ¶25.[4]

---

[4] Because the firearms ban in itself was sufficient to render D.K.'s challenge to his commitment not moot, the court declined to address D.K.'s costs of care or negative stigma arguments. *Marathon Cty. v. D.K.*, 2020 WI 8, ¶25 n.7, 390 Wis. 2d 50, 937 N.W.2d 901.

¶10    However, unlike ***D.K.***, the instant case involves an appeal from an extension order, not an initial commitment order. As noted by the County, the firearms ban here was imposed in both the original commitment order and in the recommitment order. Both orders specifically state that the firearms prohibition "shall remain in effect until lifted by the court" and that "[e]xpiration of the mental commitment proceeding does not terminate this restriction." There is no indication in the record, nor does C.A.D. assert, that the firearms ban was ever lifted following its initial imposition. Thus, as argued by the County, even if the recommitment order were reversed, the firearms prohibition would still apply.

¶11    As stated, the ***D.K.*** court's determination that D.K.'s appeal was not moot was based on the court's conclusion that "a decision in D.K.'s favor would void the firearms ban and therefore have a 'practical effect.'" ***Id.*** In contrast to ***D.K.***, the question here is whether a decision reversing the 12-month *extension* would impact the firearms ban. Because C.A.D. has failed to show that a decision in his favor would "void the firearms ban" and therefore have a practical effect, *see **id.***, this case is distinguishable from ***D.K.***

¶12    C.A.D. argues that the extension order could have an impact on his ability to have the firearms prohibition lifted. C.A.D. states that a person banned from possessing a firearm following an involuntary commitment may petition the circuit court to cancel the ban, and that, pursuant to WIS. STAT. § 51.20(13)(cv)1m.b., the circuit court may grant such a request only if, among other things, "the individual's record and reputation indicate that the individual is not likely to act in a manner dangerous to public safety and that the granting of the petition would not be contrary to public interest." ***Id.*** C.A.D. argues that the number of commitments or extensions a person has on his or her record "is relevant" to the court's determination of whether an individual is likely to act in a

manner dangerous to public safety. As a result, he asserts: "The firearms ban associated with C.A.D.'s commitment extension and the extension's implications for his ability to obtain a cancellation of the ban are therefore real and substantial collateral consequences of the recommitment order."

¶13 However, C.A.D.'s conclusory assertion, without more, is insufficient to show that the firearms ban, or an inability to get the ban lifted, results from the 12-month extension challenged in this case. Thus, he has not shown that reversing the recommitment order underlying this appeal would impact the firearms ban. Accordingly, vacating this extension order would have no practical effect on C.A.D.'s firearm restriction. *See Sauk Cty. v. S.A.M.*, No. 2019AP1033, unpublished slip op. ¶12 (WI App Sept. 3, 2020); *Milwaukee Cty. v. E.C.H.*, No. 2019AP772, unpublished slip op. ¶11 (WI App Jan. 14, 2020).

¶14 The same rationale applies with respect to the social stigma that C.A.D. asserts is associated with the recommitment order in this case. C.A.D. does not explain why any potential social stigma would be the result of the 12-month extension rather than from the initial commitment itself. Nor has C.A.D. alleged that he has suffered from any particular social stigma associated with either his initial commitment or the extension of his commitment. *See S.A.M.*, No. 2019AP1033, ¶13; *E.C.H.*, No. 2019AP772, ¶10.

¶15 As to C.A.D.'s argument that a reversal of the recommitment order "would have financial consequences for him" because an individual committed under WIS. STAT. ch. 51 is "normally liable for the costs of care," I note that C.A.D. has not alleged any actual monetary liability for which he has been or will be held responsible. C.A.D.'s hypothetical liability does not constitute a

consequence sufficient to avoid application of the mootness doctrine in this case. *See S.A.M.*, No. 2019AP1033, ¶14; *E.C.H.*, No. 2019AP772, ¶12.

¶16    Because C.A.D. has not shown that collateral consequences have resulted or will result from the 12-month extension in this case, I apply the holding in *J.W.K.* that the "appeal of [his] expired [re]commitment order is moot." *See J.W.K.*, 386 Wis. 2d 672, ¶14.  Finally, C.A.D. does not argue that any of the five exceptions to the mootness doctrine apply, nor does my independent review reveal that any of these "exceptional or compelling circumstances" are presented by this case. *See id.*, ¶12.

## CONCLUSION

¶17    For the reasons stated, C.A.D.'s appeal is dismissed as moot.

*By the Court.*—Appeal dismissed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.