MANAGED HEALTH SERVICES INSURANCE CORP.,
Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF HEALTH SERVICES and
Wisconsin Department of Administration,
Respondents-Respondents.

Court of Appeals

*No. 2010AP2551. Submitted on briefs July 29, 2011.
—Decided September 7, 2011.*

2011 WI App 139

(Also reported in 806 N.W.2d 260.)

447

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John A. Busch*, *John D. Finerty, Jr.* and *Thomas A. Janczewski* of Michael, Best & Friedrich LLP of Milwaukee.

On behalf of the respondents-respondents, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Steven P. Means*, assistant attorney general.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. In this agency review, Managed Health Services Insurance Corp. appeals from a circuit court order affirming a Wisconsin Department

of Administration ("DOA") decision. DOA rejected Managed Health's argument that the Wisconsin Department of Health Services ("DHS") violated State procurement procedures. Because we conclude that the issues Managed Health raises on appeal are moot, we dismiss the appeal.

### The Request for Proposals

¶ 2. In October 2009, DHS issued a Request for Proposals ("RFP") for the procurement of BadgerCare Plus managed care contracts in southeastern Wisconsin. The RFP was a new initiative by the State, meant to introduce competition into the procurement process for Medicaid HMO services, with the aim of improving health care outcomes and reducing costs.

¶ 3. Managed Health, along with Abri Health Plan, Inc., Children's Community Health Plan, Compcare Health Services Insurance Corporation, and UnitedHealthcare, all submitted timely responses to the RFP. In April 2010, Managed Health received two letters from DHS. The first set forth DHS's Notice of Intent to Contract with Abri, Children's, Compcare, and United for the procurement of BadgerCare Plus managed care. The second requested that Managed Health begin the process of transitioning its members to the "winning HMO proposers."

### Ex Parte Communications

¶ 4. In order to ensure the integrity of the procurement process, DHS attempted to limit communications between staff engaged in the RFP process and proposers.

449

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

¶ 5. In June 2009, in anticipation of issuing the RFP, DHS sent an email to all managed health care providers, copying numerous employees within DHS, advising them as follows:

> Jennifer DeYoung is being deployed to fully focus on completing the RFP and managing the procurement. To ensure the integrity of the procurement process, Jen's communications with potential bidders will be very limited.

¶ 6. Later in August 2009, DHS sent another email to DHS staff, stating that the RFP was under development and cautioning DHS staff that, should they receive inquiries from proposers about the RFP, they should state that:

> Any contact with any State of Wisconsin Department of Health Services employees or administrative appointees concerning this upcoming solicitation is prohibited, except as authorized by the Procurement Manager, Jacqueline Sommers Smith, who is to be the sole point of contact during the development of the solicitation until the notice of intent to contract is released.

¶ 7. Furthermore, section 1.3 of the RFP informed proposers that "[a]ny contact with State employees concerning this RFP is prohibited, except as authorized by the RFP manager during the period from date of release of the RFP until the notice of intent to contract is released."

¶ 8. Managed Health challenges a number of communications that occurred between proposers and DHS staff while the RFP was being drafted and while the proposals were being evaluated, arguing that these "*ex parte* communications" violated the "established protocols" set forth above.

450

¶ 9. First, on September 24, 2009, before DHS issued the RFP, Kevin Hayden, a former DHS Secretary and current president of Anthem Blue Cross and Blue Shield's state sponsored business unit (which includes Compcare, one of the RFP proposers), sent a letter to his successor at DHS, Secretary Karen Timberlake. In the letter, Hayden urged Secretary Timberlake to reduce the significance of cost in evaluating the RFP responses. Instead of cost, Hayden advocated that DHS should emphasize quality of care and the network components of the RFP. Secretary Timberlake forwarded the letter to Wisconsin's Medicaid Director Jason Helgerson and to DeYoung.[1]

---

[1] Because DHS does not contend otherwise and the facts are not critical to our holding, we accept as true Managed Health's assertions that Hayden is a former DHS Secretary and current president of Anthem's state sponsored business unit, that Compare is included in that unit, that Hayden wrote a letter to Secretary Timberlake, and that Secretary Timberlake forwarded that letter on to Helgerson and DeYoung. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted facts are deemed admitted). However, the problems with Managed Health's assertions are twofold. First, Managed Health only cites to the letter itself for all of these assertions, but while the letter is included in Managed Health's appendix, it is not in the record we received on appeal. Managed Health's appendix indicates that the letter was included as an exhibit at the June 25, 2010 motion hearing, but the exhibits from that hearing were not transmitted to this court on appeal. It was Managed Health's responsibility to see that the record was sufficient for the court to review the issues Managed Health raised on appeal. *See State Bank of Hartland v. Arndt*, 129 Wis. 2d 411, 423, 385 N.W.2d 219 (Ct. App. 1986). Second, the letter itself does not contain any information regarding Hayden's former role as DHS Secretary, his current role as president of Anthem, or otherwise indicate that Compcare is in anyway related to Anthem. *See*

451

¶ 10. Second, on November 4, 2009, after the RFP was issued, Secretary Timberlake received a letter from Anthem Blue Cross and Blue Shield, urging DHS to "require [RFP] bidders to have a network intact as a condition to being awarded the bid," and complaining that the Children's Hospital of Wisconsin would not enter into a network agreement with Anthem because of the pending RFP. Children's Hospital sent Secretary Timberlake a letter in response to Anthem's letter. DHS circulated Anthem's and Children's Hospital's letters to at least three people at DHS that may have been involved in the RFP selection process. In November 2009, Helgerson replied to Anthem's letter, stating that "[d]ue to the nature of the State procurement process and the rules attendant to it, neither Secretary Timberlake, nor any Department or other State employee, is at liberty to comment on the issues raised in your letter."[2]

---

WIS. STAT. RULE 809.19(1)(d) (2009–10) (requiring briefs contain a statement of the case containing appropriate references to the record). While these facts may otherwise be found in the record, it is not the court's responsibility to sift through the record to search for them. We caution counsel to use more care in the future. All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[2] Again, we accept Managed Health's assertions regarding the letters received and transmitted to and from DHS, Anthem, and Children's Hospital as true because they are uncontroverted by DHS and are not central to our resolution of Managed Health's claims. *See Charolais Breeding Ranches, Ltd.*, 90 Wis. 2d at 109. But we note that although the letters are included in Managed Health's appendix, they were not included in the record transmitted to this court on appeal, or if they are, Managed Health has failed to tell us where they can be found. *See State Bank of Hartland*, 129 Wis. 2d at 423; WIS. STAT. RULE 809.19(1)(d).

452

¶ 11. In April 2010, after being notified that it was not a "winning HMO," Managed Health filed a Notice of Intent to Protest with DHS. Secretary Timberlake issued a written decision denying the protest. Managed Health filed an appeal with DOA.

¶ 12. Shortly after filing its appeal with DOA, Managed Health sent DHS a letter, requesting "that DHS *immediately cease and desist* from proceeding with the award of managed care contracts" while the appeal was pending. In response to the letter, DHS filed a written request with DOA, asking for permission to engage in preparations for the implementation of the new BadgerCare Plus contracts "to protect the substantial interests of the State," but asserting that it would not sign any contracts with the winning proposers unless and until the appeal was resolved in DHS's favor. On June 11, 2010, based upon DHS's representations that it "w[ould] not execute any contracts relating to th[e] procurement until a decision on the appeal ha[d] been made," DOA permitted DHS to begin laying the groundwork for implementation.

¶ 13. On June 11, 2010, the same day DOA permitted DHS to begin preparing for implementation of the contracts, Managed Health filed a declaratory judgment action in Milwaukee County Circuit Court, asking the court to declare that: (1) "WIS. ADMIN. CODE § Adm. 10.15(6) requires a stay of all [DHS] activity with respect to the award and performance of a contract pending administrative review"; (2) "DHS's RFP evaluation violated Wisconsin competitive bidding laws and administrative regulations"; and (3) Managed Health "met the requirements of the RFP and should have been awarded a contract by DHS." Managed Health further

453

asked the circuit court to "[g]rant a temporary restraining order and temporary injunction prohibiting DHS and DOA from entering into any contracts arising out of the RFP, concerning the procurement of BadgerCare Plus managed care services in the RFP Region, and staying implementation of the award of managed care contracts in the RFP Region." The circuit court granted the temporary restraining order and set the matter for a hearing on the injunction.

¶ 14. Thereafter, on June 21, 2010, DOA denied Managed Health's appeal. Following entry of DOA's final order, Managed Health filed an amended petition for judicial review in the circuit court, requesting that the circuit court set aside the April 2010 Notice of Intent to Contract, or in the alternative, issue an order directing DHS to award a contract to Managed Health.

¶ 15. The circuit court held a hearing on the temporary injunction motion on June 25, 2010. On June 30, 2010, the circuit court denied the motion, concluding that Managed Health did not have a "reasonable probability of success on the merits that would warrant th[e] court to stay the proceedings." Following the circuit court's ruling, DHS informed the court that it intended to move forward and sign contracts with the winning proposers. Managed Health did not object and sought no relief from the circuit court's decision.

¶ 16. Thereafter, DHS moved to dismiss, and Managed Health moved for leave to conduct discovery. Both motions were denied.

¶ 17. The circuit court ordered an expedited briefing schedule to resolve the remainder of Managed Health's claims. Following briefing, the circuit court affirmed DOA. Managed Health now appeals.

### Discussion

¶ 18. On appeal, Managed Health argues that: (1) DHS violated State procurement procedures when it established communication protocols and then breached those protocols by allowing undisclosed *ex parte* communications between proposers and staff assigned to the RFP, resulting in an unfair advantage to some proposers; and (2) the trial court misapplied Wis. Stat. § 227.57(1) and (4) when it denied Managed Health's discovery motion, required a showing of prejudicial error, and refused to remand the case to DHS for reconsideration of the RFP outcome.

¶ 19. In response, DHS contends that Managed Health's claims are moot because DHS signed contracts with the winning proposers after Managed Health failed to obtain an injunction. Because the contracts have been signed, DHS submits that Managed Health cannot obtain the remedies it seeks, and therefore its claims are moot pursuant to *PRN Associates LLC v. State of Wisconsin Department of Administration*, 2009 WI 53, 317 Wis. 2d 656, 766 N.W.2d 559. We agree with DHS.

¶ 20. "An issue is moot when its resolution will have no practical effect on the underlying controversy." *Id.*, ¶ 25. We "generally decline to reach the merits of an issue that has become moot," *id.*, ¶ 29, because as a general rule, we do not determine abstract principles of law, *id.*, ¶ 28. Whether an issue is moot is a question of law we review *de novo*. *State ex rel. Milwaukee Cnty. Pers. Review Bd. v. Clarke*, 2006 WI App 186, ¶ 28, 296 Wis. 2d 210, 723 N.W.2d 141.

¶ 21. To determine whether the resolution Managed Health seeks can have any practical effect on the

455

existing controversy, we need not address the legal issues Managed Health raises on appeal. *See PRN*, 317 Wis. 2d 656, ¶ 31. Instead, we examine Managed Health's requested relief. *See id.* In its amended petition for judicial review, Managed Health requested that the circuit court: (1) set aside DHS's April 2010 Notice of Intent to Contract; or (2) in the alternative, issue an order directing DHS to award a contract to Managed Health. We conclude that *PRN* precludes Managed Health from recovering either remedy.

¶ 22. In *PRN*, the Wisconsin Supreme Court reviewed PRN's claim that DOA improperly denied PRN a contract to renovate a State building due to a flawed RFP process. *See id.*, ¶¶ 28–49. PRN did not seek an injunction to prevent the contract from being awarded to the winning bidder, *id.*, ¶ 42, and the winning bidder completed the contract before the circuit court ruled upon PRN's claim, *id.*, ¶ 22. The supreme court upheld the circuit court's decision dismissing PRN's petition for judicial review because it concluded that—even assuming that PRN could successfully establish all of its claims—resolution of those claims could not have any practical effect after DOA signed a contract with the winning bidder. *Id.*, ¶¶ 4, 22. As such, it concluded that PRN's claims were moot. *Id.*, ¶ 4.

¶ 23. The supreme court's focus in *PRN* was on the expectation that PRN, as an aggrieved bidder, would " 'zealously protect' the public interest and the public purse by taking legal action to ensure that a contract is not awarded to the wrong bidder." *See id.*, ¶ 43 (citation omitted). By focusing on the bidder's responsibility to the public, the supreme court held that an aggrieved bidder is "required" to take *any* legal steps available "to protect [its] interest[s]," *see id.*, ¶ 48, and "ensure that a contract is not awarded to the wrong bidder," *see id.*,

¶ 43. In that light, PRN could have, and should have, filed a motion for an injunction to protect its interests.

¶ 24. Here, after the circuit court's adverse decision on its motion for an injunction, Managed Health could have, and should have, asked the circuit court to stay proceedings and sought relief from a non-final order with this court. *See* WIS. STAT. § 808.03(2)(b) (permitting review of a non-final order with permission of the court if the appeal will "[p]rotect the petitioner from substantial or irreparable injury"). The parties agree that DHS informed the court on the record that DHS was "prepared to move forward with the signing [of the contracts] in the absence of a stay or injunction," after the circuit court denied Managed Health's motion for injunctive relief. Despite being notified that DHS intended to enter into contracts with the winning proposers, Managed Health failed to take further action to prevent DHS from doing so. Because it did not, DHS signed contracts with the four winning proposers, and now Managed Health's claims are moot.

¶ 25. Managed Health contends that *PRN* stands for the proposition that an aggrieved proposer is only required to file a motion for a temporary injunction to prevent its claims from becoming moot, and Managed Health properly did so here. There are two problems with this argument. First, that assertion directly conflicts with Managed Health's argument to the circuit court when advocating for the temporary injunction. In its brief in support of its motion for a temporary injunction, Managed Health argued that if DHS signed contracts with the winning proposers, Managed Health's claims *would* be moot, stating:

> [U]nder the prevailing case law, [Managed Health] cannot obtain damages from DHS to compensate it for

its losses if it subsequently prevails, so it has no adequate legal remedy. *See* [*PRN*, 317 Wis. 2d 656]. DHS admits as much. [*Managed Health*]'s *petition will also become moot once DHS completes implementation of the contracts within weeks, making judicial review meaningless.*

(Emphasis added.) We do not allow a party to adopt inconsistent positions throughout legal proceedings. *See Kopfhamer v. Madison Gas and Elec. Co.*, 2002 WI App 266, ¶ 24, 258 Wis. 2d 359, 654 N.W.2d 256. Second, as *PRN* demonstrates, and as Managed Health recognized in the above quote, once the contracts were signed, Managed Health's claims were moot.

¶ 26. Furthermore, public policy set forth in *PRN* supports dismissing Managed Health's petition for judicial review as moot. The statutes and regulations surrounding procurement " 'are designed to prevent fraud, collusion, favoritism and improvidence in the administration of public business, *as well as to ensure that the public receives the best work . . . at the most reasonable price practicable.*' " *Id.*, 317 Wis. 2d 656, ¶ 34 (citation omitted; ellipses in *PRN*; emphasis added). "As such, these regulations 'are intended for the benefit and protection of the public and not of the individual bidder.' " *Id.* (citation omitted). An aggrieved proposer, like Managed Health, "has standing to contest an agency's decision to award [a] contract to another [proposer] . . . because [it] 'is in a particularly good position to challenge the bidding authority's action and *thereby protect the rights of the public.*' " *See id.*, ¶ 35 (citation omitted; emphasis added).

¶ 27. Requiring DHS to award Managed Health a BadgerCare Plus managed care contract, at this late date, would "thwart[] the purpose underlying the procurement statutes because it would" cause substantial

harm to the public by wasting previously expended State resources and requiring considerable additional State resources. *See id.*, ¶ 36. In an affidavit before the circuit court, Helgerson stated, in relevant part, that:

- DHS entered into contracts with each of the four winning proposers on June 30, 2010;

- DHS expected approximately 250,000 members to enroll in one of the four contracted managed care plans beginning on September 1, 2010;

- In anticipation of enrollment, DHS had already printed enrollment packets specific to each of the four contracted HMOs and developed a web-tool and an interactive voice response system specific to the four winning proposers;

- Awarding a contract to Managed Health would force DHS to reassign certain BadgerCare Plus participants to Managed Health at the expense of the other winning proposers, causing confusion and putting patients at risk; and

- Awarding a contract to Managed Health would force DHS to start the multi-month implementation process over, resulting in months of wasted work and suspending improvements in patient care.

Furthermore, Helgerson implied that requiring DHS to contract with Managed Health after DHS had signed contracts with the four winning proposers may subject DHS to liability from the other proposers because:

each of the successful proposers signed a contract knowing that it would be competing in the marketplace with only three other managed care organizations. Each would have created a business model around this expectation. If DHS had to include [Managed Health] in the region, it would change the factors that the four contracted HMOs considered in deciding to enter into the contracts.

Managed Health does not contest these facts set forth by Helgerson. In fact, in its brief before the circuit court, Managed Health admitted that it would be "difficult to reverse full contract implementation."

¶ 28. Consistent with *PRN*, we must conclude that Managed Health's claims became moot when DHS signed contracts with the four winning proposers on June 30, 2010.[3]

*By the Court.*—Appeal dismissed.

------

[3] While we decline to reach the merits of Managed Health's claims, including whether breaches in protocol unfairly tainted the procurement process, we are concerned about the claims. Simply put, there is much smoke here that may, if fully investigated, reveal a taint in the procurement process.