STARK, P.J.[1]
¶ 1 Wayne Tauber was held in contempt of court and sentenced to six months in jail, subject to several purge conditions, after the circuit court found he violated a court order governing the funeral arrangements for his and Shelly Tauber's son. Wayne now argues that the court erroneously exercised its discretion in finding his conduct was contemptuous, that the six-month jail sentence was not a proper remedial contempt sanction, and that a purge condition preventing him from speaking negatively about Shelly was either unreasonable or infringed upon his right to free speech. We reject Wayne's first argument and affirm in that respect. However, we conclude Wayne's contempt was not continuing when the court imposed the remedial sanction, and, therefore, we reverse that part of the contempt order imposing and staying the jail sentence. With the jail sentence vacated, there is no sanction to purge. Accordingly, we also conclude Wayne's challenge to the purge condition is moot, and we direct the court to vacate the jail sentence and the challenged purge condition on remand.
BACKGROUND
¶ 2 Shelly and Wayne divorced in 2013. On February 4, 2017, their fourteen-year-old son Henry[2] attempted to hang himself while in Shelly's custody. Henry passed away on March 3, 2017, after Shelly and Wayne stipulated via court order to terminate his life support and medical care.
¶ 3 After a hearing and per the parties' stipulations, the circuit court entered a supplemental order setting forth the parties' roles in arranging Henry's funeral. The order directed that the funeral home owned by Wayne was to be used for all funeral arrangements, that a visitation would be held at the funeral home, and that a visitation and funeral Mass for Henry would be held at an area Catholic church. In consideration for permitting the funeral to be held at Wayne's funeral home, the court specifically ordered that Shelly be responsible for making all the necessary funeral arrangements. Relevant to the eventual contempt proceedings, the order directed that "[Shelly[3] ] shall work with Mark A. Vande Kolk," a funeral director employed by Wayne, "in making all arrangements set forth herein and is not required to coordinate said arrangements with [Wayne]." The order also provided:
[Shelly] shall be entitled to fully participate in every part of the wake and funeral service. [Shelly] shall be accorded the respect of said participation as the mother of [Henry], which includes standing at the casket, access to the funeral home, and any additional involvement that is customary and appropriate.
¶ 4 Two days before the funeral home visitation, Wayne made preliminary arrangements to conduct a Hmong funeral for Henry to follow the visitations and Mass provided for in the order. Vande Kolk approached Shelly and conveyed Wayne's proposal to her about holding the Hmong services. Shelly at first requested additional details, but she later filed an ex parte motion for a restraining order prohibiting any Hmong services. Wayne cancelled the proposed Hmong services, and the circuit court entered an order prohibiting him from holding additional services not outlined in the previous order.
¶ 5 Just prior to opening the funeral home visitation to the public, Wayne set up a table in the viewing area of Henry's casket. Several items were on the table, including suicide awareness ribbons, pamphlets about suicide prevention, and a stack of cards. On the left half of these cards was an image of Henry with "love you [Henry]!" printed underneath. On the right half of these cards was the following text:
When he told his mom he was feeling suicidal, she sent him to his room and told him to relax.
[Henry] 8/16/02-3/3/17
Parents listen to your child. Friends listen to your friends. They may be crying for help! Text "hopeline " to 741741 available 24 hours a day or National Suicide Prevention Lifeline 800-273-TALK (8255)
¶ 6 The cards were brought to Shelly's attention during her private viewing before the visitation, and she contacted her attorney to have them removed. Neither Shelly nor Vande Kolk previously approved the placement of the table or the cards, and Vande Kolk discovered more of the cards placed in the funeral home's front lobby. Shortly before the visitation was opened to the public, the circuit court ordered Wayne via telephone to remove the cards and to not distribute them during the visitation. Wayne removed all of the cards and did not distribute them after the court's order.
¶ 7 After the funeral services, Shelly filed a motion asking Wayne to be held in contempt of court due to his violations of the order governing the funeral arrangements. At the contempt hearing, Wayne testified Henry had attempted suicide on two other occasions while in Shelly's custody. He stated that he placed the cards on what he characterized as a "suicide prevention table" at the visitation for educational purposes and that he did not believe placing the cards would upset Shelly. Vande Kolk testified that, prior to Henry's funeral, Wayne's funeral home had never used a suicide prevention table or similar cards during the services for a suicide victim.
¶ 8 In an oral ruling, the circuit court found Wayne in contempt of court. Specifically, the court found Wayne intentionally violated the court's supplemental order governing the funeral arrangements when Wayne placed the cards at the visitation, thus impairing Shelly's "ability to grieve and conduct herself in the manner that she, as a mother of someone who died, would be able to do." The court also found Wayne's attempt to hold the Hmong services was a "clear violation of the court order," but it stated that act was "really secondary" to the placement of the cards at the funeral.
¶ 9 The circuit court imposed a six-month jail sentence for the contempt but stayed that sentence subject to Wayne completing several purge conditions. Pertinent to this appeal, the court ordered that Wayne had to "refrain from directly or indirectly making any further defamatory, derogatory or negative statements, comments, advertisements, posts or any other form of communication that involves or refers directly or indirectly to [Shelly] or their deceased son" for the next twenty-four months. As an exception to this condition, the court allowed Wayne to "hav[e] communications in what the Court consider[s] a privileged relationship," which included discussions with an "attorney[,] a counselor, medical personal, [sic] a psychiatrist, a psychologist, a clergy person." The court qualified this exception by directing "that such privileged communication cannot be repeated to anyone else." Wayne now appeals.[4]
DISCUSSION
I. Contempt of Court
¶ 10 Wayne first argues the circuit court erroneously exercised its discretion in finding him in contempt. We review a circuit court's use of its contempt power for an erroneous exercise of discretion. Benn v. Benn , 230 Wis. 2d 301, 308, 602 N.W.2d 65 (Ct. App. 1999). A court properly exercises its discretion when it logically interprets the facts, applies the proper legal standard, and uses a demonstrated rational process to reach a reasonable conclusion. Id. Whether a person has committed a contempt of court is a question of fact, and we shall uphold a court's findings of fact unless they are clearly erroneous. See Oliveto v. Circuit Court for Crawford Cty. , 194 Wis. 2d 418, 428, 533 N.W.2d 819 (1995).
¶ 11 Contempt of court is defined, in relevant part, as the "intentional ... disobedience, resistance or obstruction of the authority, process or order of a court." WIS. STAT. § 785.01(1)(b). Wayne argues his placement of the cards and his attempt to hold the Hmong services did not constitute intentional violations of the order governing the funeral arrangements. We disagree for two reasons.
¶ 12 First, Wayne ignores our standard of review by suggesting his conduct was not intentional. While Wayne concedes that "the cards could be viewed after the fact as having been worded in poor taste," he claims that "the cards were put there for educational purposes to raise awareness about suicide." He also asserts that he did not intend to impair Shelly's participation in the funeral or disrespect Shelly by placing the cards at the funeral home. The circuit court disagreed, finding that Wayne's testimony on this point at the contempt hearing was "nothing short of unbelievable," and noting that similar displays had never been used in other funerals of suicide victims at Wayne's funeral home. The court also found that Wayne intentionally chose to arrange the Hmong services without seeking prior court approval and did so with the knowledge such services were not contemplated in the supplemental order. We are bound by the circuit court's credibility determinations and weighing of the evidence. See Lessor v. Wangelin , 221 Wis. 2d 659, 665, 586 N.W.2d 1 (Ct. App. 1998).
¶ 13 Second, Wayne incorrectly interprets the order governing the funeral arrangements when he contends it did not prohibit the specific acts for which he was found in contempt. Regarding placement of the cards, Wayne contends they did not impair Shelly's "participation" in the funeral services because the cards were removed before the visitation was opened to the public. As the circuit court noted, however, the cards "unfairly created emotional harm and emotional stress" for Shelly in light of the sensitive nature of Henry's death. This stress occurred just prior to Henry's visitation being opened to the public. The court concluded Wayne's actions limited Shelly's "ability to grieve" and thus interfered with her "full[ ] participat[ion]" and "the respect of ... participation" in "every part of the wake and the funeral service," as mandated in the order.
¶ 14 Regarding Wayne's attempts to plan the Hmong services, the order specifically provided that Shelly "shall work ... in making all arrangements herein" with Vande Kolk, not with Wayne. (Emphasis added.) Rather than move the court for permission to hold this additional service prior to the order being entered, Wayne unilaterally proposed the arrangements to Shelly using Vande Kolk as an intermediary. The order also specifically provided that only a Mass and visitation would be held. Contrary to Wayne's interpretation, the order did not allow additional services based upon further agreement of the parties.[5] We conclude the circuit court did not err when it found Wayne in contempt of court for his violations of the order.
II. Remedial Sanction
¶ 15 Wayne next argues that the circuit court failed to follow the proper procedure in imposing the six-month jail sentence as a sanction for his contempt. This issue presents a question of law that we review de novo. See Frisch v. Henrichs , 2007 WI 102, ¶ 29, 304 Wis. 2d 1, 736 N.W.2d 85.
¶ 16 Nonsummary contempt may be imposed as either a punitive sanction or a remedial sanction. Id. , ¶ 33. In this case, the circuit court proceeded under the remedial contempt provisions of WIS. STAT. § 785.03(1)(a) because Shelly initiated the contempt proceedings. See Diane K.J. v. James L.J. , 196 Wis. 2d 964, 970, 539 N.W.2d 703 (Ct. App. 1995). Remedial sanctions pursuant to § 785.03(1)(a) are designed to address the private interests of a litigant and to force one party to comply with a demand of another. Frisch , 304 Wis. 2d 1, ¶ 35. Under WIS. STAT. § 785.04(1)(b), a court may impose imprisonment for a remedial contempt. The imprisonment may extend only "so long as the person is committing the contempt of court or 6 months, whichever is the shorter period." Id. For the circuit court to impose a remedial sanction, however, there must be a continuing contempt of court at the time remedial sanction is considered. Christensen v. Sullivan , 2009 WI 87, ¶ 75, 320 Wis. 2d 76, 768 N.W.2d 798 ; Frisch , 304 Wis. 2d 1, ¶ 47.
¶ 17 Wayne argues that the circuit court's six-month jail sentence was an improper remedial sanction because his contempt was no longer "continuing" by the time Shelly moved to find him in contempt of court. We agree.[6] In this case, Wayne's contemptuous acts-attempting to plan the additional Hmong services and placing the cards at the visitation-had been remedied by the time Shelly moved for contempt of court. The jail sanction thus served only to punish Wayne for his past acts and to vindicate the court's authority. Those objectives, while understandable in this context, are hallmarks of a punitive sanction. See Christensen , 320 Wis. 2d 76, ¶ 75 ; see also Diane K.J. , 196 Wis. 2d at 970 (noting remedial sanctions are designed to coerce compliance with existing court orders, not to deter future misconduct). Shelly claims she has suffered lasting emotional distress due to Wayne's contemptuous acts, but she cites no authority in support of the notion that her distress alone means Wayne's contempt was continuing after the funeral visitation. As the jail sentence was not a proper remedial sanction, we direct the circuit court on remand to vacate the imposed and stayed sentence.
III. Purge Condition
¶ 18 Finally, Wayne argues that the purge condition prohibiting him from making certain statements regarding Shelly for twenty-four months was improperly imposed.[7] This condition was specifically ordered by the circuit court to purge the jail sanction ordered, and not as a separate sanction for Wayne's contempt. The circuit court has authority to establish other conditions to purge a sanction for remedial contempt, and we review establishment of these conditions for an erroneous exercise of discretion. See Benn , 230 Wis. 2d at 308, 311. "The purge condition contrasts with the sanction because it is a means for the contemnor to avoid the sanction by atoning for his or her past failure to obey the court's order." State ex rel. V.J.H. v. C.A.B. , 163 Wis. 2d 833, 845, 472 N.W.2d 839 (Ct. App. 1991). A purge condition must reasonably relate to the cause or nature of the contempt, and satisfaction of a purge condition must be within the power of the contemnor. See State ex rel. Larsen v. Larsen , 165 Wis. 2d 679, 685, 478 N.W.2d 18 (1992).
¶ 19 Wayne initially argues this purge condition was unreasonable. Any discussion with family and friends about Henry's death would inevitably lead to a discussion about Shelly and her "failure to listen to Henry." He contends the purge condition would effectively prevent him from mourning and expressing grief over Henry's death. Wayne also argues the purge condition was an impermissible prior restraint that violated his First Amendment right to freedom of speech. See Near v. Minnesota ex rel. Olson , 283 U.S. 697, 713 (1931).
¶ 20 We need not address the merits of Wayne's arguments because we conclude this issue is moot. The circuit court ordered the purge condition prohibiting Wayne from making certain statements regarding Shelly for twenty-four months as a means for Wayne to avoid the imposed and stayed jail sanction. However, we have reversed that sanction. Even if Wayne were to speak negatively about Shelly and violate the purge condition, he would suffer no consequence because the jail sentence will have been vacated. Simply put, there is nothing for Wayne to avoid. See V.J.H. , 163 Wis. 2d at 845. As a result, addressing and resolving Wayne's arguments on the purge condition will have no practical effect on the underlying controversy. The challenge to the purge condition is moot. See Managed Health Servs. Ins. Corp. v. DHS , 2011 WI App 139, ¶ 20, 337 Wis. 2d 447, 806 N.W.2d 260. We direct that the circuit court vacate this purge condition on remand.[8]
¶ 21 No costs to either party.
By the Court. -Order affirmed in part; reversed in part and cause remanded with directions.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

"Henry" is a pseudonym.

The circuit court orders here referred to Shelly as "Petitioner." Similarly, Wayne almost exclusively refers to Shelly with the designation "Joint-Petitioner-Respondent" in his appellate briefing, but Wis. Stat. Rule 809.19(1)(i) requires that parties be referenced by name, not by party designation. We remind Wayne and his counsel of this rule for future appeals.

Shelly was represented by counsel in the circuit court but is now pro se on appeal. In a statement to this court, Henry's guardian ad litem has declined to participate in this appeal.

Without any factual or legal support, Wayne asserts that if the order barred him from holding a Hmong funeral for Henry, then it "would be a clear violation on [sic] his constitutional right to freedom of religion and therefore unenforceable." We will not address this undeveloped argument. See State v. Pettit , 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992).

Shelly's response brief does not address this argument. Wayne contends we must interpret this omission as concessions of error. However, we typically afford pro se litigants such as Shelly leeway in complying with the rules expected to be followed by attorneys. See Rutherford v. LIRC , 2008 WI App 66, ¶ 27, 309 Wis. 2d 498, 752 N.W.2d 897. We therefore address the merits of Wayne's argument.

Wayne raises no issues involving any of the other purge conditions, and he does not question the court's authority to impose these conditions due to his contemptuous conduct without any threat of a jail sentence. This court will not abandon its neutrality to develop arguments on a party's behalf. See Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82.

As a final matter, we reject Shelly's various arguments and requests for relief in her response brief, most of which are undeveloped and lack citation to the record or relevant law. Shelly argues that this appeal must be deemed frivolous under Wis. Stat. Rule 809.25(3) and that we must award her attorney fees (despite the fact that she is self-represented). However, Wayne's arguments neither evinced bad faith nor lacked a reasonable basis in law or equity, especially considering that we agree with him that the remedial sanction was improper. See Rule 809.25(3)(c)1.-2. Shelly also requests that we extend the contempt order for five more years and that we bar Wayne from filing any further proceedings in the circuit court regarding her and her family. Shelly did not make these requests in the circuit court, and they are not properly before us on appeal. As a result, we decline to consider them further.