AESTHETIC AND COSMETIC PLASTIC SURGERY CENTER,
LLC, Plaintiff-Respondent,†

v.

WISCONSIN DEPARTMENT OF TRANSPORTATION,
Defendant-Appellant.

Court of Appeals

*No. 2013AP2052. Submitted on briefs June 3, 2014.
—Decided July 15, 2014.*

2014 WI App 88

(Also reported in 853 N.W.2d 607.)

† Petition for Review denied October 6, 2014.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *J.B. Van Hollen*, attorney general, and *Sara K. Beachy*, assistant attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Alan Marcuvitz* and *Andrea H. Roschke* of *Michael Best & Friedrich LLP*, Milwaukee.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. FINE, J. This case involves relocation expenses sought by a business whose property was taken by the Wisconsin Department of Transportation. The Department appeals the declaratory judgment entered in favor of Aesthetic and Cosmetic Plastic Surgery Center, LLC, declaring that Aesthetic was entitled to a two-move relocation plan. The Department claims that the circuit court should have dismissed Aesthetic's complaint because Aesthetic's declaratory-judgment action is barred by the State's sovereign immunity. We agree and therefore reverse.

I.

¶ 2. WISCONSIN STAT. § 32.20 is the dispositive statute and is thus the lens through which we must examine the facts underlying this appeal. It provides:

199

**Procedure for collection of itemized items of compensation.** Claims for damages itemized in ss. 32.19 and 32.195 shall be filed with the condemnor carrying on the project through which condemnee's or claimant's claims arise. *All such claims must be filed after the damages upon which they are based have fully materialized* but not later than 2 years after the condemnor takes physical possession of the entire property acquired or such other event as determined by the department of administration by rule. *If such claim is not allowed within 90 days after the filing thereof, the claimant has a right of action against the condemnor carrying on the project through which the claim arises. Such action shall be commenced in a court of record in the county wherein the damages occurred.* In causes of action, involving any state commission, board or other agency, excluding counties, the sum recovered by the claimant shall be paid out of any funds appropriated to such condemning agency. Any judgment shall be appealable by either party and any amount recovered by the body against which the claim was filed, arising from costs, counterclaims, punitive damages or otherwise may be used as an offset to any amount owed by it to the claimant, or may be collected in the same manner and form as any other judgment.

(Emphasis added.) Therefore, as material here, the legislature has decreed that:

(1) Claims for relocation expenses under Wis. Stat. § 32.19 "must be filed *after* the damages upon which they are based have fully materialized," Wis. Stat. § 32.20 (emphasis added); and

(2) If the agency does not allow a claim "within 90 days," the claimant may then sue in court, and either party may appeal from an adverse judgment. *Id.*

200

## II.

¶ 3. The Department wanted Aesthetic's building in connection with a road-improvement project in Milwaukee County, and negotiated the matter with Aesthetic's sole owner, Lorelle Kramer, M.D. The circuit court found that as a result of those negotiations the Department "served its Jurisdictional Offer," *see* Wɪs. Sᴛᴀᴛ. § 32.06(3), on August 15, 2012, "to purchase" Aesthetic's property. The Offer proposed the following terms:

- The Department would "occupy and [Aesthetic] will vacate" the property on "11/30/2012";

- The Department would pay $940,000 for the property;

- The $940,000 did not include "additional items of damage listed in s. 32.19 Wis. Stats.";

- With respect to the "additional items of damage listed in s. 32.19 Wis. Stats.," "[i]f any such items are shown to exist [Aesthetic] may file claims as provided in s. 32.20 Wis. Stats."

- "This offer, if accepted by [Aesthetic], shall constitute a binding contract."

¶ 4. Aesthetic accepted the Department's Jurisdictional Offer on September 5, 2012, and, as a result, sold the property to the Department on October 1, 2012. The circuit court found that the Department served Aesthetic "with a ninety (90) day notice providing that [Aesthetic] must vacate the subject property by December 31, 2012." Aesthetic did not vacate the property by that date, and the Department sought a writ of assistance on January 11, 2013. The circuit court granted the writ on February 15, 2013. The circuit

court found that Aesthetic vacated the property "on or around February 17, 2013."

¶ 5. As material, WIS. STAT. § 32.19, which is referenced in both WIS. STAT. § 32.20 and the Department's Jurisdictional Offer to Aesthetic, sets the underlying policy in § 32.19(1): "The legislature declares that it is in the public interest that persons displaced by any public project be fairly compensated by payment for the property acquired and other losses hereinafter described and suffered as the result of programs designed for the benefit of the public as a whole." Thus, the section requires that agencies that take property for a public purpose "make fair and reasonable relocation payments" to those displaced. § 32.19(3).[1]

---

[1] WISCONSIN STAT. § 32.19, as material to this appeal, further provides:

. . . .

(3) RELOCATION PAYMENTS. Any condemnor which proceeds with the acquisition of real and personal property for purposes of any project for which the power of condemnation may be exercised, or undertakes a program or project that causes a person to be a displaced person, shall make fair and reasonable relocation payments to displaced persons, [and] business concerns . . . under this section. Payments shall be made as follows:

(a) *Moving expenses; actual.* The condemnor shall compensate a displaced person for the actual and reasonable expenses of moving the displaced person and his or her . . . business . . . including personal property; actual direct losses of tangible personal property as a result of moving or discontinuing a business . . ., but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property; actual reasonable expenses in searching for a replacement business . . .; and actual reasonable expenses necessary to reestablish a business . . ., not to exceed $10,000, unless compensation for such expenses is included in the payment provided under sub. (4m).

(b) *Moving expenses; optional fixed payments.*

. . .

## ¶ 6. The Department of Administration promulgated regulations to guide agencies with the power to

2. 'Business . . . .' Any displaced person who moves or discontinues his or her business . . ., is eligible under criteria established by the department of administration by rule and elects to accept payment authorized under this paragraph in lieu of the payment authorized under par. (a), may receive a fixed payment in an amount determined according to criteria established by the department of administration by rule, except that such payment shall not be less than $1,000 nor more than $20,000. . . .

. . . .

(4m) BUSINESS . . .. (a) *Owner-occupied business* . . . . In addition to amounts otherwise authorized by this subchapter, the condemnor shall make a payment, not to exceed $50,000, to any owner displaced person who has owned and occupied the business operation, . . . for not less than one year prior to the initiation of negotiations for the acquisition of the real property on which the business . . . lies, and who actually purchases a comparable replacement business . . . for the acquired property within 2 years after the date the person vacates the acquired property or receives payment from the condemnor, whichever is later. An owner displaced person who has owned and occupied the business operation, . . . for not less than one year prior to the initiation of negotiations for the acquisition of the real property on which the business . . . lies may elect to receive the payment under par. (b) 1. in lieu of the payment under this paragraph, but the amount of payment under par. (b) 1. to such an owner displaced person may not exceed the amount the owner displaced person is eligible to receive under this paragraph. The additional payment under this paragraph shall include the following amounts:

1. The amount, if any, which when added to the acquisition cost of the property, other than any dwelling on the property, equals the reasonable cost of a comparable replacement business . . . for the acquired property, as determined by the condemnor.

2. The amount, if any, which will compensate such owner displaced person for any increased interest and other debt service costs which such person is required to pay for financing the acquisition of any replacement property, if the property acquired was encumbered by a bona fide mortgage or land contract which was a valid lien on the property for at least one year prior to the initiation of negotiations for its acquisition. The amount under

203

take property for a public use. *See* Wis. Admin. Code § ADM 92.001 (March 1986) ("The purpose of this chapter is to implement ss. 32.185 to 32.27, Stats., by establishing minimum standards for providing relocation payments and services to a person who moves from a . . . business . . . because of acquisition for a public project, and to assure that such persons do not suffer disproportionate costs as a result of projects designed to benefit the public as a whole."). Thus, an agency that takes property is directed to assist the relocation needs of a displaced business. *See* Wis. Admin. Code § ADM 92.38 ("An agency shall provide relocation assistance to a person as specified under this chapter and commensurate with individual need, whenever the acquisition of property for a project will result in the displacement of a person.); § ADM 92.40 ("An agency shall provide displaced persons with the following services: (1) Advice on eligibility requirements and the availability of relocation payments and services.") (paragraphing altered). Wis. Admin. Code § ADM 92.24 provides:

> The purpose of a relocation plan is to assure that an agency will provide adequate relocation payments

this subdivision shall be determined according to rules promulgated by the department of administration.

3. Reasonable expenses incurred by the displaced person for evidence of title, recording fees and other closing costs incident to the purchase of the replacement property, but not including prepaid expenses.

A "displaced person" is defined, as material as: "any person who moves from real property or who moves his or her personal property from real property: a. As a direct result of a written notice of intent to acquire or the acquisition of the real property, in whole or in part or subsequent to the issuance of a jurisdictional offer under this subchapter, for public purposes." Wis. Stat. § 32.19(2)(e)1. (Paragraphing altered.)

204

and services and to determine whether displaced persons can be satisfactorily relocated. The department [of Administration] may not approve a relocation plan unless an agency submits evidence and assurances that relocation payments and services provide the following:

. . . .

(2) Displaced business[es] . . . shall have an opportunity to occupy a comparable replacement and shall be assisted in reestablishing with a minimum of delay and loss of earnings.

WISCONSIN ADMIN. CODE § ADM 92.24 also says that the Department of Administration "may not approve a relocation plan unless an agency submits evidence and assurances that relocation payments and services provide . . . (3) [that] [p]rompt and complete relocation payments will be made." (Paragraphing altered.)

¶ 7. The Department of Administration's regulations also recognize that relocation of businesses may necessitate a temporary move first and then a move to a permanent location, so that the business's operation will be disrupted as little as possible. Thus, WIS. ADMIN. CODE § ADM 92.50 provides that: "[a]n agency shall pay a person for the following moving and related expense: ... (5) *One move, except the cost of a temporary move and a final move shall be paid when a hardship exists or when approved by an agency.*" (Paragraphing altered; emphasis added.)

¶ 8. After a series of discussions with the Department of Transportation during which Aesthetic alleges that it was first told that the Department had approved a two-move relocation plan, only to be told later that a two-move relocation plan was not approved, Aesthetic filed this action seeking a declaratory judgment, *see* WIS. STAT. RULE 806.04, that it was, indeed, entitled to a

two-move relocation plan. The trial court held an evidentiary hearing at which the following persons testified:

- Dr. Kramer.

- Andrew Jensen, Dr. Kramer's fiancé. Jensen testified that he had been a licensed real estate broker in Wisconsin since 1986 and was "a managing partner at Cushman and Wakefield Company, [a] commercial real estate broker." He also testified that he worked with Dr. Kramer in her dealings with the Department.

- Daniel Vaclav, a Department of Transportation employee who testified that he was the Department's "relocation coordinator" for Southeast Wisconsin, which included Milwaukee County.

¶ 9. Vaclav testified that he told Aesthetic that although he personally could "not approve" a two-move relocation plan for Aesthetic, he consulted the apparent decision-makers in the Madison "central office," and that he reported to Aesthetic that such a plan "could be possible." Dr. Kramer told the circuit court that after she had explained to Vaclav why Aesthetic needed a two-step move, he ultimately indicated that he had gotten the requisite approval: "And he made it very clear that he needed central office approval for two moves, not initially, but he eventually, as it got closer, and he did at more than one occasion say I have approval. I have central office approval for two moves." Dr. Kramer also testified that in a mid-November of 2012 meeting she attended along with Vaclav, another Department employee, Aesthetic's lawyer, and Jensen, "[w]e were informed that they weren't paying for two moves." Jensen's testimony tracked that of Dr. Kramer. Aesthetic then filed this declaratory-judgment action.

¶ 10. In a written decision, the circuit court found "the testimony of Dr. Lorelle Kramer and Andrew Jensen more credible than that of Dan Vaclav," and thus found that the Department *had* "approved a two-move program for" Aesthetic. The trial court also concluded that Aesthetic's declaratory judgment action was not barred by either sovereign-immunity, which the circuit court held the Department "waived" "by making an appearance before the Court and seeking relief on a matter extraneous to personal jurisdiction . . . in order to obtain a writ of assistance," or by the exhaustion-of-remedies doctrine.[2] Further, the trial court concluded that WIS. STAT. § 32.20 did not preclude entry of a judgment declaring that the Department of Transportation had approved a two-move relocation plan for Aesthetic because the Department would still have to assess the reasonableness of the two-move relocation plan under § 32.20 and award damages:

> [T]he Court does not equate agency approval as provided in Wis. Admin. Code Adm § 92.50(5) with a fixed amount of compensation for a temporary relocation. In other words, the Court finds it possible for the [Department of Transportation] to approve of a temporary

---

[2] Although the circuit court and the parties refer to the Department of Transportation's alleged "waiver" of the sovereign-immunity defense, the concept is more properly characterized as an alleged forfeiture. *See State v. Ndina*, 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 670, 761 N.W.2d 612, 620 ("Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts. 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.' ") (quoted source omitted). Unless quoting, we refer to the concept of forfeiture in this opinion when referring to whether the circuit court was correct when it ruled that the Department relinquished its right to rely on a sovereign-immunity defense.

relocation under Wis. Admin. Code Adm § 92.50(5) prior to considering a claim for damages under Wis. Stat. § 32.20. This interpretation is consistent with the Legislature's stated purpose for relocation assistance, which is to "assure that displaced persons are treated uniformly, fairly and equitably." Wis. Admin. Code Adm § 92.001.

¶ 11. We agree with the Department of Transportation that Aesthetic's declaratory-judgment action is barred by sovereign immunity. We therefore do not discuss its alternative arguments. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

## III.

■■■■
¶ 12. "Whether a claim is barred by sovereign immunity is a question of law." *Canadian National Railroad v. Noel*, 2007 WI App 179, ¶ 5, 304 Wis. 2d 218, 222–223, 736 N.W.2d 900, 902. Application of statutes is also a question of law. *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2011 WI App 101, ¶ 5, 335 Wis. 2d 151, 165, 801 N.W.2d 781, 788. We review legal issues *de novo. Ibid.* On the other hand, a circuit court's findings of fact must be upheld on appeal unless they are "clearly erroneous." Wis. Stat. Rule 805.17(2). The circuit court's finding that the Department initially agreed that it would approve a two-move relocation plan for Aesthetic is hardly "clearly erroneous" inasmuch as it is supported by the testimony of Dr. Kramer and Jensen, whom the circuit court specifically found to be more credible than Vaclav.

## A. *Sovereign immunity.*

██

¶ 13. Article IV, § 27 of the Wisconsin Constitution provides: "The legislature shall direct by law *in what manner* and in what courts suits may be brought against the state." (Emphasis added.) *See also PRN Associates LLC v. State of Wisconsin Department of Administration,* 2009 WI 53, ¶ 51, 317 Wis. 2d 656, 683, 766 N.W.2d 559, 573. ("[T]he State cannot be sued without its consent, *and the legislature directs the manner in which suits may be brought against the State.*") (emphasis added). "A suit against a state agency constitutes a suit against the State for purposes of sovereign immunity." *Id.,* 2009 WI 53, ¶ 51, 317 Wis. 2d at 683–684, 766 N.W.2d at 573. Further, "[i]f the legislature has not specifically consented to the suit, then sovereign immunity deprives the court of personal jurisdiction over the State, assuming that the defense has been properly raised." *Id.,* 2009 WI 53, ¶ 51, 317 Wis. 2d at 684, 766 N.W.2d at 573.

¶ 14. Here, of course, as we have seen, the legislature has determined the "manner" by which someone displaced by an agency taking property for a public purpose may recover the expenses encompassed by WIS. STAT. § 32.19: WIS. STAT. § 32.20 directs the displaced party to file its claims with the agency but not until *"after the damages upon which they are based have fully materialized."* (Emphasis added.) Aesthetic did not do that; rather, as we have seen, it sought to circumvent the "after . . . fully materialized" condition *via* this declaratory judgment action.

██

¶ 15. A party may use a declaratory-judgment action to get relief from the state or a state agency

under some circumstances: "Like other lawsuits, actions for declaratory relief can be dismissed on the grounds of sovereign immunity. Nonetheless, there are occasions when a suit for declaratory judgment against a state agency is permissible." *PRN Associates*, 2009 WI 53, ¶ 52, 317 Wis. 2d at 684, 766 N.W.2d at 573. *PRN Associates* adopted the analysis in *Lister v. Board of Regents of the University Wisconsin System*, 72 Wis. 2d 282, 240 N.W.2d 610 (1976). *See PRN Associates*, 2009 WI 53, ¶ 52, 317 Wis. 2d at 684, 766 N.W.2d at 573. *Lister* noted:

> [T]he court has also recognized that the declaratory judgment procedure is particularly well-suited (in cases where such relief is otherwise appropriate) for resolving controversies as to the constitutionality or proper construction and application of statutory provisions. As a result, it has been necessary to engage in a fiction that allows such actions to be brought against the officer or agency charged with administering the statute on the theory that a suit against a state officer or agency is not a suit against the state *when it is based on the premise that the officer or agency is acting outside the bounds of his or its constitutional or jurisdictional authority.*

*Lister*, 72 Wis. 2d at 303, 240 N.W.2d at 623 (footnote omitted; emphasis added) (quoted in part by *PRN Associates*, 2009 WI 53, ¶ 52, 317 Wis. 2d at 684, 766 N.W.2d at 573). Both *PRN Associates* and *Lister* held that " '[a] declaration which seeks *to fix the state's responsibility to respond to a monetary claim* is not authorized by Wisconsin's Declaratory Judgments Act.' " *See PRN Associates*, 2009 WI 53, ¶ 57, 317 Wis. 2d at 686, 766 N.W.2d at 574 (quoting *Lister*, 72 Wis. 2d at 308, 240 N.W.2d at 625) (emphasis added).

¶ 16. As we have seen, the circuit court here specifically recognized that Aesthetic did not seek an

award of damages in this declaratory-judgment action, and the circuit court did not award any. Rather, as we have also seen, the circuit court held that, based on its credibility analysis of the conflicting testimony, the Department had agreed that Aesthetic was entitled to a two-move relocation plan, and that Aesthetic could *then* submit its claims under WIS. STAT. § 32.20 to recover damages in connection with that plan. But, and this is crucial, the circuit court's declaratory-judgment relief was not based on its conclusion that the Department had violated a statute or otherwise acted outside the scope of its legislatively created authority. Rather, the circuit court weighed the evidence and short-circuited the § 32.20 procedures that Aesthetic agreed to when it accepted the Department's Jurisdictional Offer. *PRN Associates* teaches that this was error.

¶ 17. PRN Associates sought a declaratory judgment that the Department of Administration should have given it a state contract. *Id.*, 2009 WI 53, ¶ 2, 317 Wis. 2d at 664, 766 N.W.2d at 564. It argued among other things that the State had consented to the suit in WIS. STAT. § 775.01 (2007–2008), which provided, as, material: " 'Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service . . . and by filing with the clerk of court a bond . . . to the effect that the claimant will indemnify the state against all costs that may accrue in such action . . . in case the claimant fails to obtain judgment against the state.' " *See PRN Associates*, 2009 WI 53, ¶ 58, 317 Wis. 2d at 686–687, 766 N.W.2d at 575 (quoting § 775.01 (2007–2008); ellipses by *PRN Associates*). *PRN Associates* held that the declaratory-judgment attempt to circumvent the *manner* in which the State had consented to be sued in

211

§ 775.01 was fatal. *PRN Associates*, 2009 WI 53, ¶¶ 59–61, 317 Wis. 2d at 687, 766 N.W.2d at 575:

> [PRN Associates] filed an action in court seeking a declaration of rights, presumably so that it could later file a claim for money damages with the legislature. In order to have personal jurisdiction over the [Department of Administration], however, we must first conclude that the legislature authorized this suit. The legislature has not authorized this suit against the State unless [PRN Associates] has followed the conditions precedent for bringing suit. It has not done so here.

*Id.*, 2009 WI 53, ¶ 61, 317 Wis. 2d at 687, 766 N.W.2d at 575. This is akin to what we have here, and we substitute the facts of this case in *PRN Associates*'s paragraph 61, which we have just quoted:

> [*Aesthetic*] filed an action in court seeking a declaration of rights, presumably so that it could later file a claim for money damages with the legislature [*under Wis. Stat. § 32.20*]. In order to have personal jurisdiction over the [*Department of Transportation*], however, we must first conclude that the legislature authorized this suit. The legislature has not authorized this suit against the State unless [*Aesthetic*] has followed the conditions precedent for bringing suit [*namely, an initial submission to the Department of Transportation under § 32.20, and, if not satisfied with the Department's response, an action seeking judicial review*]. [*Aesthetic*] has not done so here.

The situation here is thus different than *Miesen v. State of Wisconsin Department of Transportation*, 226 Wis. 2d 298, 594 N.W.2d 821 (Ct. App. 1999), upon which Aesthetic relies.

¶ 18. *Miesen* concerned Wis. Stat. § 32.05, which permitted the property owner to, among other things,

contest the condemnation award and appraisal costs incurred by the property owner. *Miesen*, 226 Wis. 2d at 306–307, 594 N.W.2d at 826. Section 32.05 also permitted the property owner to go to court in order to challenge the award. *Miesen*, 226 Wis. 2d at 306–307, 594 N.W.2d at 826. Even though the statute did not specifically indicate that the property owner could also challenge the Department's evaluation of what were reasonable appraisal costs, *Miesen* held that the general consent to sue in § 32.05 encompassed any dispute over the appraisal costs. *Miesen*, 226 Wis. 2d at 307–308, 594 N.W.2d at 826–827 ("Although we recognize that clear and express consent is required, Wisconsin law does not require that the legislature clearly and expressly waive the State's sovereign immunity with respect to each type of claim that might be brought under § 32.05.") ("[W]e conclude that the legislature intended to fully waive immunity from suit after the [Department of Transportation] commences condemnation proceedings under § 32.05."). Here, by contrast, the legislature *has* specifically "direct[ed] *the manner* in which suits may be brought against the State," WIS. CONST. art. IV, § 27, to vindicate rights under WIS. STAT. § 32.19—the displaced person has to file a claim under WIS. STAT. § 32.20, which must, under that section's specific language, *precede* any resort to court.

¶ 19. Aesthetic argues that WIS. ADMIN. CODE § ADM 92.50(5), which, as we have seen, directs the agency to pay for: "[o]ne move, except the cost of a temporary move and a final move shall be paid when a hardship exists or when approved by an agency," means that the "approval" may come first (that is, *before* the displaced person submits a claim under WIS. STAT. § 32.20), as the circuit court held. That meaning, however, *if correct* (the regulation could also be interpreted,

as the Department persuasively argues, to mean that the agency is to decide as part of a displaced person's § 32.20 claim whether to approve a two-move relocation plan) would make the regulation inconsistent with § 32.20 because that statute, as we have seen at some length, requires that claims "must" be submitted to the agency "*after* the damages upon which they are based have *fully materialized.*" (Emphasis added.) If there is any conflict between a statute promulgated under WIS. CONST. art. IV, § 27, and a regulation designed to "implement" that statute (and recall that under WIS. ADMIN. CODE § ADM 92.001 "[t]he purpose" of the regulation "is to implement ss. 32.185 to 32.27, Stats."), the statute governs. *Milwaukee Transport Services, Inc. v. Department of Workforce Development*, 2001 WI App 40, ¶ 9, 241 Wis. 2d 336, 346, 624 N.W.2d 895, 900 ("If a regulation conflicts with a statute, the statute governs. We should, if at all possible, construe regulations to harmonize them with any applicable statute.") (citations omitted).

¶ 20. Accordingly, as in *PRN Associates*, the State's sovereign immunity deprives the circuit court of jurisdiction over Aesthetic's attempted end run around WIS. STAT. § 32.20, unless, as Aesthetic argues, and the circuit court concluded, the Department forfeited its sovereign-immunity defense.

B. *Preservation of a sovereign-immunity defense.*

¶ 21. As we have seen, the circuit court held that the Department "waived" its sovereign-immunity defense because the Department sought and received a writ of assistance in order to remove Aesthetic from the property. The following chronology might help to put this dispute in context.

214

December 27, 2012: Aesthetic filed its summons and declaratory-judgment complaint.

January 3, 2013: The Department filed its lawyers' notice of appearance. The notice recited that it was "subject to and without waiving any objection to jurisdiction or to the Court's competency to proceed."

January 11, 2013: The Department filed its application for a writ of assistance and its letter of transmittal to the circuit court. The letter noted that: (1) the Department asserted that it would "file its answer and affirmative defenses or other response within the statutorily allowed 45–day time for answering"; and (2) the Department "is not waiving any objections or defenses to Plaintiff's Complaint, including the defense of sovereign immunity."

February 4, 2013: The Department filed its answer to Aesthetic's complaint. The Answer averred as one of its affirmative defenses that Aesthetic's claim was "barred by the doctrine of Sovereign Immunity."

February 15, 2013: The Department filed its motion to dismiss Aesthetic's complaint "on the grounds of sovereign immunity."

February 15, 2013: The circuit court signed the Department's requested writ of assistance.

In rejecting the Department's sovereign-immunity defense, the circuit court, as we have seen, concluded that

the Department "waived" that defense "by making an appearance before the Court and seeking relief on a matter extraneous to personal jurisdiction . . . in order to obtain a writ of assistance." The circuit court opined:

> Sovereign immunity is a matter of personal jurisdiction. *See Manitowoc Co., Inc. v. City of Sturgeon Bay,* 122 Wis. 2d 406, 411, 362 N.W.2d 432, 436 (Wis. Ct. App. 1984). The Defendant waived the defense of lack of personal jurisdiction by making an appearance before the Court and seeking relief on a matter extraneous to personal jurisdiction. *See Lees v. Dep't of Indus., Labor & Human Relations,* 49 Wis. 2d 491, 499, 182 N.W.2d 245, 500 (1971) ("[t]his court has held that where an appearance is made and relief is sought on other matters, an objection of lack of personal jurisdiction is waived.") Specifically, the Defendant availed itself of this Court's jurisdiction in order to obtain a writ of assistance.

¶ 22. *Lees v. Department of Industry, Labor & Human Relations,* 49 Wis. 2d 491, 182 N.W.2d 245 (1971), concerned an attempt to review a decision by the Department of Industry, Labor & Human Relations "that James P. Lees, receiver of real and personal property of Sahara 29, Inc., in a foreclosure action, . . . was a successor in interest of the unemployment compensation account of Sahara 29, Inc." *Id.,* 49 Wis. 2d at 493, 182 N.W.2d at 246–247. Lees did not serve a summons on the Department, as it was required to do. *Id.,* 49 Wis. 2d at 496, 182 N.W.2d at 248. The Department's answer alleged that the circuit court lacked *subject-matter* jurisdiction; it did *not* allege that the circuit court lacked *personal* jurisdiction. *Id.,* 49 Wis. 2d at 498, 182 N.W.2d at 249. *Lees* noted that under the Wisconsin Constitution and statutes the circuit court "has subject matter jurisdiction if it has the

power to hear the kind of action brought," *id.*, 49 Wis. 2d at 496, 182 N.W.2d at 248, and that failure to serve the summons did not deprive the circuit court of subject-matter jurisdiction, *id.*, 49 Wis. 2d at 496–497, 182 N.W.2d at 248. The Department's answer did not, however, assert as a defense that the circuit court lacked *personal* jurisdiction because Lees had not served it with a summons. *Id.*, 49 Wis. 2d at 498, 182 N.W.2d at 249. *Lees* held that the Department could thus not challenge the circuit court's personal jurisdiction because it had appeared without raising *that* objection: "While lack of subject matter jurisdiction may be raised at any time, a party who appears and fails to object to the court's jurisdiction to his person submits to the jurisdiction of the court." *Id.*, 49 Wis. 2d at 498–499, 182 N.W.2d at 249–250 (citation omitted). *See also Artis-Wergin v. Artis-Wergin,* 151 Wis. 2d 445, 448, 453, 444 N.W.2d 750, 751–752, 753–754 (Ct. App. 1989) (Foreign-resident military-service defendant in a divorce action whose lawyer's letter to the circuit court merely sought " 'a delay of six months before a response is due in this matter' " under the Soldiers' and Sailors' Civil Relief Act of 1940 but "did not expressly reserve a jurisdictional objection," forfeited his personal-jurisdiction defense because "failing to reserve a jurisdictional objection served as an appearance and gave the court personal jurisdiction.").

¶ 23. *Lees* and *Artis-Wergin*, on which Aesthetic relies, are both inapposite because the Department of Transportation here consistently asserted its sovereign-immunity defense: in its letter transmitting its application for a writ of assistance, in its timely answer, and in its timely motion to dismiss. *See* Wis. Stat. Rule 802.06(8)(a) ("A defense of lack of jurisdiction over the person . . . is waived *only* if any of the following condi-

tions is met: . . . 2. The defense is neither made by motion under this section nor included in a responsive pleading.") (emphasis added). *See also* WIS. STAT. RULE 801.06 ("A court of this state having jurisdiction of the subject matter may . . . exercise jurisdiction in an action . . . over any person who appears in the action and waives the defense of lack of jurisdiction over his or her person as provided in s. 802.06(8)."). Thus, assuming without deciding that seeking a writ of assistance before the filing of an answer or the making of a motion asserting a sovereign-immunity defense required a "special appearance," as Aesthetic in essence argues, the Department's letter of January 11, 2013, transmitting the application for writ of assistance to the circuit court was certainly that "special appearance" because it asserted, as we have seen, that the Department "is not waiving any objections or defenses to Plaintiff's Complaint, including the defense of sovereign immunity." A more clear assertion and preservation of the sovereign-immunity defense is hard to imagine.[3]

---

[3] We therefore do not need to decide whether the phrase "personal jurisdiction" in the sovereign-immunity cases encompasses "personal jurisdiction" analyses where a defendant (whether the State, a state agency, or a non-governmental party) contends that the plaintiff has not effectuated proper service. *Compare Bicknese v. Sutula*, 2003 WI 31, ¶ 68, 260 Wis. 2d 713, 747, 660 N.W.2d 289, 306 (" '*[I]f properly raised*,' " sovereign immunity " 'deprives the court of personal jurisdiction over the state.' ") (emphasis added; quoted source omitted) *with* WIS. CONST. art. IV, § 27 ("The legislature shall direct by law *in what manner* and in what courts suits may be brought against the state.") (emphasis added). Possible resolution of whether art. IV, § 27, controls irrespective of whether the state or state agency raised the sovereign-immunity defense in a responsive pleading or motion will have to await another day because the parties have not focused on that issue and its resolution is

██

¶ 24. The Department did not forfeit its right to claim sovereign immunity in connection with Aesthetic's declaratory-judgment action. Accordingly, we reverse the judgment, and remand this matter to the circuit court with directions that it dismiss Aesthetic's declaratory-judgment action against the Department of Transportation.

*By the Court.*—Judgment reversed and cause remanded with directions.

immaterial to our decision. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed). *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").