**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 10, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. 2022AP94
2022AP99

Cir. Ct. Nos. 2005CI2
2008CI1

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

NO. 2022AP94

IN RE THE COMMITMENT OF DALE H. PESHEK:

STATE OF WISCONSIN,

    PETITIONER-APPELLANT,

  V.

DALE H. PESHEK,

    RESPONDENT-RESPONDENT.

---

NO. 2022AP99

IN RE THE COMMITMENT OF KEVIN LEDOUX:

STATE OF WISCONSIN,

    PETITIONER-APPELLANT,

  V.

**KEVIN LEDOUX,**

**RESPONDENT-RESPONDENT.**

APPEAL from orders of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   These appeals present the narrow issue of whether the circuit court erred by mandating that the State pay for all expenses relating to the County's construction or placement of a residential facility to house individuals placed on supervised release during their WIS. STAT. ch. 980 (2021-22)[1] commitments.   Frustrated by lengthy delays in finding appropriate housing after Dale H. Peshek and Kevin LeDoux had been deemed eligible for supervised release, the circuit court ordered Kenosha County to construct or place a structure on the grounds of its detention center, and it required the State to pay for it.   The State now appeals, challenging the financial aspect of the orders based on its contention that the relevant statute now places the responsibility for "identify[ing] an appropriate residential option" on counties.

---

[1]  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶2     We reject the State's arguments.  First, we conclude the circuit court's orders were not barred by sovereign immunity, as these cases involve government-initiated civil commitments and are not lawsuits seeking monetary damages.  Second, we conclude the court's orders require the State to do nothing more than pay for the committed person's housing while on supervised release, something it is already required to do under WIS. STAT. § 980.12(1) and controlling case law.  The State proceeds from the false premise that the court orders required it to "locate, build, or buy housing for sex offenders," when in fact the County bears those responsibilities under the orders and has not sought to appeal them.  Finally, we conclude the court's directing the orders to the "State" rather than to the Wisconsin Department of Health Services (DHS) are not fatal to the orders under the circumstances here.  We affirm.

## BACKGROUND

¶3     Dale Peshek and Kevin LeDoux were both adjudicated "sexually violent persons" and committed to the care and custody of DHS under WIS. STAT. ch. 980.  Both Peshek and LeDoux sought supervised release and were found to be suitable candidates.[2]  *See* WIS. STAT. § 980.08(4)(cg).  These findings created an obligation on the part of Kenosha County to create a committee and prepare reports identifying "an appropriate residential option in that county while the person is on supervised release."  *See* § 980.08(4)(dm)1.  Those reports were due

---

[2] Peshek was found to be a suitable candidate for supervised release on November 1, 2019, based upon the parties' stipulation; LeDoux was deemed a suitable candidate for supervised release on May 26, 2021, following an evidentiary hearing.

120 days after the court orders and were then to be used by DHS in preparing supervised release plans. *See* § 980.08(4)(dm)4., (4)(f).

¶4 In February 2020, the Kenosha County Corporation Counsel notified the circuit court[3] that it would not have a residential option selected for Peshek within the statutorily-allotted 120 days. The letter referred to the fact that another person eligible for supervised release had been waiting for more than one year for a residential option in light of the restricted areas in which such persons may reside, *see* WIS. STAT. § 980.08(4)(dm)1.a.-c., and the "exceedingly tight real estate market in southeastern Wisconsin." In response, Peshek, relying on *State v. Sprosty*, 227 Wis. 2d 316, 595 N.W.2d 692 (1999), and *State v. Schulpius*, 2006 WI 1, 287 Wis. 2d 44, 707 N.W.2d 495, moved for an order "compelling Kenosha County to buy, build, or lease a residence." The County opposed the motion.

¶5 In 2021, a residential option was very nearly obtained for Peshek, but following substantial community opposition it was determined to be too near a park. Peshek's and LeDoux's cases were subsequently transferred to the Hon. Bruce E. Schroeder, who conducted a hearing in Peshek's case on October 18, 2021, and in LeDoux's case on November 17, 2021. The transcripts of those hearings are not located in the appellate records; however, it appears that at each hearing the circuit court requested that the Kenosha County Corporation Counsel file proposed orders requiring the construction or placement of a structure on the grounds of the Kenosha County Detention Center sufficient to house individuals placed on supervised release.

---

[3] The Hon. Jason A. Rossell was presiding over the case at this point in time.

¶6      The circuit court held a joint hearing regarding the proposed orders on December 1, 2021.   There were a number of government attorneys: two Wisconsin Department of Justice attorneys appeared on behalf of the State of Wisconsin, another Assistant Attorney General appeared on behalf of the DHS, and the Kenosha County Corporation Counsel appeared on behalf of the County. With the attorneys for Peshek and LeDoux, the parties and the court collectively explored the contours of the proposed orders and which entities they should be directed to.

¶7      The DHS attorney pointed out that under WIS. STAT. § 980.08(4), the County has primary responsibility for identifying a residential option for persons granted supervised release.   She argued that neither the statute nor interpreting case law provided authority "for DHS or the state to purchase property in this circumstance."   She also highlighted the lengthy statutory procedure for purchasing property, and she argued that DHS funding was limited and there were "potential[] … problems with sovereign immunity" if the court ordered the State to spend money.

¶8      The County argued WIS. STAT. § 980.08(4) appeared to limit the County's obligation to identifying a leasable property, with DHS then stepping in to negotiate the lease and pay all sums due as rent pursuant to WIS. STAT. § 980.12(1).  Addressing the proposed order, the corporation counsel stated he did not see anything in the statute that would prohibit the State from leasing property from the County.  But he expressed concern with the construction or placement contemplated by the circuit court, noting the primary issue "is just who is going to bear the sort of, if you will, upfront costs of doing this."   Nonetheless, the corporation counsel acknowledged the years that Peshek and others had been

5

awaiting supervised release, and he stated that the County would "do its best to comply with whatever order the Court sees fit to issue."

¶9    Peshek, in particular, emphasized the egregiousness of the delay in identifying a residential option for him.  Peshek noted that while some counties, like Kenosha County, utilized the "vendor" model—wherein the county makes a referral to a vendor, which purchases the property and leases it directly to the State—other counties that had been unable to find housing for individuals on supervised release had resorted to buying or building their own facilities. Additionally, Peshek noted that while WIS. STAT. ch. 980 provided a potential remedy for a county's violation of the 120-day time limit for identifying a residential option, any money awarded pursuant to that provision does not go to the committed person but rather is deposited in the DHS appropriation account. *See* WIS. STAT. § 980.08(4)(dm)4.  Peshek and LeDoux ultimately took no position on which government entity should pay for the residence, but they did argue that the current state of affairs was untenable.

¶10    At the conclusion of the hearing, the circuit court remarked that its responsibility was not to "sort through the maze of different tentacles that the State has to determine, well, exactly who is appropriate here."  The orders entered by the court stated in relevant part as follows:

> IT IS HEREBY ORDERED that the County of Kenosha is to construct or place a structure on the grounds of the Kenosha County Detention Center sufficient to meet their requirements under § 980.08 (4)(dm), Wis. Stats., to identify an appropriate residential option.
>
> IT IS FURTHER ORDERED that all expenses related to the construction or placement shall be borne by the State of Wisconsin and the County is to report back to the Court within 120 days of the date of this order as to the status of the construction or placement.

6

The State now appeals both orders.[4]

<h1 style="text-align:center">DISCUSSION</h1>

¶11 At the outset, we note the narrow scope of these appeals. The County is not a party to these appeals and has not sought to intervene before the circuit court or before this court to challenge the orders at issue. As such, these appeals do not involve the propriety of the court's ordering the County to construct or place a residential structure on the detention center grounds. The State is the only appellant, and it acknowledges the limited scope of review by professing that problems with certain aspects of the orders are "more appropriately raised by the [C]ounty." The State challenges only those parts of the orders requiring the State to pay "all expenses related to the construction or placement" of that structure. In other words, these appeals are strictly about funding.

¶12 The State first argues the funding component of the circuit court's orders violates principles of sovereign immunity.[5] Sovereign immunity derives from art. IV, § 27 of the Wisconsin Constitution, which provides: "The legislature shall direct by law in what manner and in what courts suits may be brought against

---

[4] These appeals were consolidated for briefing and disposition by order dated March 3, 2022.

[5] Peshek and LeDoux argue the State has forfeited this argument by failing to adequately raise it in the circuit court. At the December 1, 2021 hearing, the attorney for DHS mentioned sovereign immunity only once, stating the order would "potentially pose problems with sovereign immunity. You know, you are asking the State to expend money. You know, I have not thought through all the problems, but I feel we are getting very far afield from what is possible here and what is even on the menu of options." The State responds that this was sufficient to alert the circuit court that it was required to address the issue. We assume without deciding that the argument was sufficiently raised, and we instead reject it on its merits.

the state." *See **Lister v. Board of Regents of Univ. of Wis. Sys.***, 72 Wis. 2d 282, 291, 240 N.W.2d 610 (1976). In determining whether sovereign immunity applies, the principal question is whether the action "constitutes a 'suit against the state.'" *Id.* Whether the defense of sovereign immunity applies depends on the nature of the relief sought; when an action is one for the recovery of money, the state is entitled to sovereign immunity from suit. *Id.* at 292. Whether a claim is barred by sovereign immunity is a question of law. ***Aesthetic & Cosm. Plastic Surgery Ctr., LLC v. DOT***, 2014 WI App 88, ¶12, 356 Wis. 2d 197, 853 N.W.2d 607.

¶13 The State's sovereign immunity arguments cannot withstand scrutiny. These are not actions seeking monetary damages against the State; they are actions commenced by the State for the purposes of civilly committing individuals and depriving them of their liberty until such time as they are no longer sexually violent persons. Upon a finding that a person meets the criteria for commitment, the person is committed "to the custody of the department for control, care and treatment." *See* WIS. STAT. § 980.06. And it is DHS's obligation to "pay from the appropriation under s. 20.435(2)(a) and (bm) for all costs relating to the evaluation, treatment, and care of persons evaluated or committed under this chapter." WIS. STAT. § 980.12(1).

¶14 Thus, it should come as no surprise to the State that such a commitment carries with it financial obligations which it may not dodge under the guise of sovereign immunity. None of the cases cited by the State in support of its sovereign immunity argument involve a WIS. STAT. ch. 980 commitment; they are all actions *by* a person *against* the State, which is not the situation here. *See **Papa v. DHS***, 2020 WI 66, ¶¶44-48, 393 Wis. 2d 1, 946 N.W.2d 17; ***PRN Assocs. v.***

*DOA*, 2009 WI 53, ¶¶50-67, 317 Wis. 2d 656, 766 N.W.2d 559; *Lister*, 72 Wis. 2d at 288-99, 305-09; *Aesthetic & Cosm. Plastic Surgery Ctr.*, 356 Wis. 2d 197, ¶¶12-20.[6]

¶15    In any event, the State's sovereign immunity arguments are really derivative of its primary argument, which is that the legislature has not authorized the expenditure of money directed by the circuit court.  But the State's brief makes a critical and pervasive error by characterizing the circuit court's orders as requiring the State to "buy or build a residence to house sex offenders."  The court's orders did no such things.  They clearly identified Kenosha County as the entity responsible for all facets of the construction or placement of the contemplated structure—a conclusion buttressed by the fact that the County was the *only* entity directed to report back to the court about the status of the project. The State's obligation under the orders was merely to pay whatever expenses the County incurred in connection with the construction or placement.

¶16    Accordingly, many of the State's arguments are misdirected.  The State notes that it currently does not bear primary responsibility under WIS. STAT. § 980.08(4) for locating or creating housing for sex offenders on supervised

---

[6] In its reply brief, the State cites to *Flottmeyer v. Circuit Ct. for Monroe Cnty.*, 2007 WI App 36, 300 Wis. 2d 447, 730 N.W.2d 421, as an example of an application of sovereign immunity when the state has not been sued directly.  The *Flottmeyer* court viewed the sovereign immunity issue as being entirely subsumed by the rule of *Martineau v. State Conservation Comm'n*, 54 Wis. 2d 76, 194 N.W.2d 664 (1972), which held that costs (in *Flottmeyer*, a jury fee) may not be taxed against the state or an administrative agency unless expressly authorized by statute.  *Flottmeyer*, 300 Wis. 2d 447, ¶¶7-8 & n.4.

*Flottmeyer* is a curious case for the State to rely on, as it expressly declined to determine whether the *Martineau* rule (and therefore sovereign immunity) actually applied.  The court merely assumed without deciding that even if it did, the statute was an express authorization for the jury fee to be taxed as a cost against the state.  *Flottmeyer*, 300 Wis. 2d 447, ¶8.

release. But the court's orders do not improperly shift those burdens to the State.[7] The State also argues it cannot purchase property apart from the lengthy and complex statutory procedures that govern the acquisition of real property and buildings. Again, the court's orders do not require the State to purchase or acquire anything. Its only responsibility is to pay for any expenses associated with the County's efforts to do so.

¶17     The State also argues that the decisions Peshek and LeDoux rely on—*Sprosty* and *Schulpius*—are inapt in light of the revisions to WIS. STAT. § 980.08 contained in 2017 Wis. Act 184. A careful review of those decisions illustrates that they remain good law insofar as they concern the State's obligation to pay for the treatment and care of persons committed under WIS. STAT. ch. 980. Though 2017 Wis. Act 184 shifted primary responsibility for locating a suitable residential option to counties, it did not alter DHS's financial obligations under WIS. STAT. § 980.12(1).

¶18     In *Sprosty*, the circuit court granted the patient's petition for supervised release. *Sprosty*, 227 Wis. 2d at 321. Under the statutes in effect at the time, this triggered an obligation by the department and Sprosty's county of residence, Crawford County, to prepare a supervised release plan. *See* WIS. STAT. § 980.08(5) (1995-96). Crawford County, however, did not have the resources necessary to address Sprosty's treatment needs. *Sprosty*, 227 Wis. 2d at 321-22. The court therefore denied supervised release and returned Sprosty to secure

---

[7] If anything, the court's orders usurped the *County's* responsibility to locate an appropriate residential option. Yet the County has not sought to intervene or appeal to contest this potential usurpation.

confinement, concluding it could not compel private agencies to accept Sprosty, nor could it require the state to build the necessary facilities. *Id.* at 322.

¶19 On appeal, the supreme court reached two conclusions that are pertinent to this case. First, it addressed whether the circuit court had authority under the then-existing supervised release statute "to order a county department or DHFS[8] to create whatever programs or facilities are necessary, regardless of cost, to accommodate an order for supervised release." *Id.* at 327. The court held that circuit courts do have such authority, justified by the statute's plain language, the dual treatment and protection-of-the-community purposes of WIS. STAT. ch. 980, and the constitutional concerns intrinsic to lengthy deprivations of liberty. *Sprosty*, 227 Wis. 2d at 327-31.

¶20 Second, the supreme court identified which entity bears the "financial burden for creating the programs or facilities necessary to place a sexually violent person on supervised release." *Id.* at 336. The court concluded that "any possible questions" regarding that issue were "answered by the legislature" when it enacted WIS. STAT. § 980.12(1). *Sprosty*, 227 Wis. 2d at 336. Chapter 980 is "not a form of county-funded treatments for civil commitments," and the department "has the financial burden of paying for necessary programs and facilities for those persons who are evaluated or committed" under it. *Id.* at 337.

¶21 In *Schuplius*, the supreme court considered whether, in light of *Sprosty*, the situation in Milwaukee County had become so egregious that *it*

---

[8] The Department of Health and Family Services was the predecessor agency to DHS.

11

should order DHS to create an appropriate residential facility for supervised release. Similar to Peshek here, Schulpius waited more than two years to be released to supervision after he was found statutorily eligible, with the delay caused by a lack of available facilities. *Schulpius*, 287 Wis. 2d 44, ¶¶8-9. He eventually obtained a circuit court order declaring WIS. STAT. ch. 980 unconstitutional as applied to him. *Schulpius*, 287 Wis. 2d 44, ¶9. Schulpius subsequently sought to enforce that order, but his motion was denied because in the interim the state had sought reconsideration and the circuit court determined Schulpius was no longer a suitable candidate for supervised release. *Id.*

¶22 Despite the reconsideration order rendering the appeal moot, the supreme court regarded the matter of a four-year delay in obtaining supervised release as warranting judicial scrutiny given the constitutional dimensions of the matter. *Id.*, ¶¶16, 28. And though it concluded Schulpius suffered no substantive due process violation, *id.*, ¶36, it determined that his right to procedural due process was violated by his "continued placement in secure confinement for an extended period after the circuit court had repeatedly ordered he be placed on supervised release," *id.*, ¶39.

¶23 The supreme court considered the remedy for the violation. It declined to order Schulpius released under the circumstances. *Id.*, ¶¶39-40. But it then contemplated whether it should independently issue an order directing DHS to create an appropriate supervised release facility in Milwaukee County. *Id.*, ¶41. The court reaffirmed that "the *Sprosty* decision is still valid, and it enables a circuit court to fashion a remedy in an appropriate situation." *Schulpius*, 287 Wis. 2d 44, ¶43. Nonetheless, the supreme court declined to order the creation of a facility at that time, noting that the facility would not benefit Schulpius. The

court also cited both the good-faith efforts of the department to find appropriate housing and the potential for a legislative solution. *See id.*, ¶¶43-49.

¶24    Before the circuit court, the DHS attorney acknowledged that *Sprosty* and *Schulpius* "appear to allow a circuit court to order [that] the state procure appropriate facilities for persons on supervised release from [WIS. STAT. ch.] 980 commitments." However, the State argues those decisions have been wholly undermined by the changes to WIS. STAT. ch. 980 brought about by 2017 Wis. Act 184.[9]    The State correctly notes that primary responsibility for identifying a residential option now rests with the county.

¶25    But the State fails to explain why this legislative change to the manner of locating a residence for persons found eligible for supervised release matters to the narrow funding question at issue in this appeal. *Sprosty* definitively established that, regardless of what facilities a circuit court deems necessary for supervised release, DHS bears the burden of paying for them under WIS. STAT. § 980.12(1). 2017 Wis. Act 184 did not change § 980.12(1). In fact, that statute has not been substantively amended since the time *Sprosty* was decided.

¶26    Accordingly, we conclude that while the entity with primary responsibility for locating a residential option under WIS. STAT. § 980.08(4) has changed, *Sprosty* remains valid insofar as it establishes that, under WIS. STAT. § 980.12(1), DHS must pay for any programs or facilities necessary to place a

---

[9] WISCONSIN STAT. § 980.08(5), on which the holding in *State v. Sprosty*, 227 Wis. 2d 316, 595 N.W.2d 692 (1999), was partially based, was repealed in 2005. *See* 2005 Wis. Act. 434, § 121. Despite the repeal, that legislation continued to require that DHS, in conjunction with the county of the person's residence, identify prospective residential options. *Id.*, §120.

person on supervised release. Given the County's absence in this appeal and the narrow issue raised, principles of judicial restraint counsel against determining at this time whether other aspects of *Sprosty* and *Schulpius* must be revisited in light of 2017 Wis. Act 184. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds.").

¶27     The State next argues that the circuit court's orders name the wrong state-level entity. The State argues it and DHS "are not identical or interchangeable," and the State (as the State) is present only for purposes of prosecuting WIS. STAT. ch. 980 commitments, whereas DHS is the entity responsible for paying for the care and treatment of committed individuals.

¶28     We view this as a rather artificial distinction. As the State notes, DHS is not typically a party to WIS. STAT. ch. 980 cases; true in these cases, and also true in *Sprosty* and *Schulpius*, which established DHS's duties and obligations under the relevant statutes. The circuit court's orders make abundantly clear that the structure to be placed is for the purpose of meeting the County's obligation under WIS. STAT. § 980.08(4)(dm) to identify an appropriate residential option for persons on supervised release. It is undisputed that an order for supervised release places the person in the custody and control of DHS, *see* § 980.08(6m), and that DHS is responsible for all sums incurred in connection with that custody and control, *see* WIS. STAT. § 980.12(1).

¶29     While the orders refer generically to the State, any expenses incurred under them are undoubtedly "costs relating to the … treatment[] and care of persons … committed under" WIS. STAT. ch. 980. WIS. STAT. § 980.12(1). The practical effect of reversing and remanding would be for the circuit court to

merely substitute "DHS" for the "State" in the relevant orders, which appears unnecessary given that there is no dispute about which agency properly bears the costs of supervised release.

¶30    Finally, the State argues that, practically speaking, even if DHS bears responsibility for the costs associated with the construction or placement of a structure for supervised release, there is inadequate funding to accomplish the task.  The budgetary complications arising from DHS's obligations under WIS. STAT. § 980.12(1) were of no moment to our supreme court when in *Sprosty* and *Schulpius* it held that circuit courts could order the creation of facilities necessary for supervised release—adding that the necessary facilities could be ordered "regardless of cost."  *See Sprosty*, 227 Wis. 2d 316, ¶21.  We fail to see why those budgetary complications should control here, given that § 980.12(1) is unchanged.

*By the Court.*—Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.